**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SARAH HERNANDEZ, )<br>)<br>Plaintiff, )<br>) Civil Action No. _____<br>v. )<br>)<br>ENFIELD BOARD OF EDUCATION, )<br>)<br>THE TOWN OF ENFIELD, and )<br>)<br>WALTER J. KRUZEL, )<br>CHAIRMAN, ENFIELD BOARD )<br>OF EDUCATION (in his official capacity), )<br>)<br>Defendants. )<br>) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Sarah Hernandez ("Ms. Hernandez"), by and through undersigned counsel, files this complaint against Defendants Enfield Board of Education ("Board"), the Town of Enfield (the "Town" or "Enfield"), and Walter J. Kruzel, Chairman, Enfield Board of Education (in his official capacity) ("Mr. Kruzel") for denying Ms. Hernandez equal access to Defendants' programs and activities in violation of federal law. She alleges as follows:

**INTRODUCTION**

1. Sarah Hernandez was, until her term ended on November 12, 2019, a member of the Board. She was elected to the Board and began her term in November 2017. Ms. Hernandez is autistic and hard of hearing. She chose to run for a position on the Board with the understanding that the Board would take appropriate steps to ensure that its communications with her were as effective as its communications with members who did not have a disability.

2. Instead, as set forth in detail below, Defendants have failed to take steps to ensure effective communication with Ms. Hernandez and, as a result, have denied her an opportunity equal to that afforded to non-disabled Board members to participate in Defendants' programs, services, or activities.

3. Defendants' failure to provide Ms. Hernandez an equal opportunity to serve on the Board, participate in Board communications, and access the content in Board meetings has caused her severe physical, emotional, and mental distress, as well as financial harm.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Ms. Hernandez's claims arise under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794.

5. Ms. Hernandez is a resident of Enfield, Connecticut, and the acts and injuries complained of herein occurred in Enfield, Connecticut.

6. Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the acts constituting violations of the ADA and Section 504 occurred in this district, and Ms. Hernandez resides in this district.

## THE PARTIES

7. Plaintiff Sarah Hernandez is autistic, profoundly hard of hearing, and has auditory processing challenges, among other disabilities. Professionally, she practices occupational therapy in pediatrics and mental health. She is an assistant professor at Bay Path University, where she teaches in her fields. She is also studying to receive her Ph.D. in Occupational Therapy.

8. Defendant Enfield Board of Education is part of the Town of Enfield and governed by Conn. Gen. Stat. §§ 10-240 and 10-241. Therefore, it is a government entity under Title II of the ADA, 42 U.S.C. § 12131, *et seq.*

9. Because the Board receives federal financial assistance in many forms, it is required to comply with Section 504.

10. Defendant Town of Enfield is a municipality created and existing as a political subdivision of the State of Connecticut pursuant to the laws of the State of Connecticut and, at all times pertinent herein, acted as a government entity through its duly authorized agents, employees, and/or representatives.

11. Because Enfield receives federal assistance in many forms, it is required to comply with Section 504.

12. Defendant Walter J. Kruzel is the current Chairman of Enfield Board of Education. He is responsible for overseeing the Board's activities, supporting the goals set by the Enfield Public Schools, and working collaboratively with the Board and the Town to ensure a free and appropriate education for all students and promote opportunities for parental and community engagement. Among other things, Mr. Kruzel is responsible for providing disability-related accommodations for Board members.

**STATEMENT OF FACTS**

13. In July 2017, when Ms. Hernandez applied to serve on the Board, she contacted the Enfield Democratic Town Committee to request accommodations for her disabilities. During the interview process and while campaigning for the position, Ms. Hernandez spoke openly of her disabilities and need for accommodations. She received accommodations during the campaign, including a door-knocking script, written information upon request, and the ability to

write notes to others during the debate. She also met with the superintendent to communicate her need for accommodations.

14. At her first meeting upon her election to the Board on November 14, 2017, Ms. Hernandez informed the members of the Board of her communication preferences. Her requests included written communication (e.g., via text or email, rather than telephone) between Board meetings, a white board for note taking in executive sessions (which could be erased at the end of the session), seating where she could pass notes to other Board members during meetings, and that others face her when speaking.

15. Soon after her initial meeting on the Board, Minority Leader Tim Neville attempted to engage Ms. Hernandez in extensive verbal communication. When she reminded him that her preferred method of communication was written, he replied that written communication was not always possible because it could be misused, and that he preferred to communicate in person or by phone.

16. In January 2018, despite her request to the Board to communicate by text or other writing, Mr. Neville contacted Ms. Hernandez by phone. During the call, Mr. Neville refused Ms. Hernandez's request to engage with her through written communications and proceeded to chastise her for asking too many questions as a member of the Board. This call lasted approximately one hour, resulting in Ms. Hernandez being unable to process its contents and in physical pain due to sensory dysregulation. Afterwards, given Mr. Neville's unwillingness to communicate effectively with Ms. Hernandez, Board secretary Tina LeBlanc offered to be Ms. Hernandez's primary contact person with the Board.

17. In February 2018, Ms. Hernandez again found herself forced to request written communication and documentation during executive sessions of the Board. Once again, Mr.

Neville responded that written documentation was not possible, and instead offered to speak to Ms. Hernandez if she needed clarification.

18. In October 2018, Ms. LeBlanc chose to cease communicating with Ms. Hernandez. Because Ms. LeBlanc was Ms. Hernandez's primary source for Board communications, her decision to cease communications caused Ms. Hernandez to suffer extreme anxiety and panic attacks that led to her hospitalization.

19. In early 2019, Mr. Neville again contacted Ms. Hernandez by phone and left her a voicemail requesting a return call. Although she responded by text, Mr. Neville insisted she call him by telephone. She again responded by text and restated that she needed written communication. On February 4, 2019, Mr. Neville sent Ms. Hernandez an email response, but stated that he could not agree to honor her need for written communication in the future. After briefly responding to her inquiries, he ended his email by offering further in person or phone discussion.

20. Upon reading this email Ms. Hernandez experienced severe emotional distress and anxiety. Without written communication, she cannot effectively communicate and participate in Board activities and service. She requested a meeting with Mr. Kruzel to discuss her communication accommodations.

21. On March 13, 2019, Ms. Hernandez met with Mr. Kruzel and Superintendent Chris Drezek to discuss her communication accommodations. Mr. Kruzel and Mr. Drezek agreed to provide her with written documents for Board executive sessions that would be collected at the end of the session to ensure confidentiality. They also agreed to develop an accommodations process for incoming Board members. At the Board meeting that same night, Ms. Hernandez

received written documents for executive session and returned them at the close of the session as agreed.

22.     On March 24, 2019, at a Board caucus meeting, Mr. Neville began to chastise Ms. Hernandez and informed her that she was not entitled to written communication. Only after Ms. Hernandez referenced the March 13 meeting with Mr. Kruzel and Mr. Drezek did Mr. Neville agree to provide her with written communication. Mr. Neville's verbal attack upon Ms. Hernandez caused her severe physical, mental, and emotional distress.

23.     At a Board meeting executive session on June 19, 2019, Board Counsel Christine Chinni began to discuss Ms. Hernandez's communication needs in the presence of the entire Board. She stated that the Board would no longer honor her communication accommodation needs. She then instructed that other Board members only speak to Ms. Hernandez in public and share no privileged information with her. Notably, the Board also failed to provide Ms. Hernandez with any written documentation for this meeting.

24.     Ms. Hernandez was unable to fully comprehend Ms. Chinni's verbal communication at the June 19 meeting. Ms. Chinni led her to believe that she had been removed from the Board. She immediately left the meeting and experienced a panic attack before even reaching home.

25.     Because no Board meetings were held in July or August 2019, the next meeting Ms. Hernandez could attend took place in September 2019. However, at Ms. Hernandez's therapist's recommendation, she did not attend the Board's September 2019 meeting because of the strong likelihood that the meeting would result in further physical, mental, and emotional distress related to her disabilities.

26. Despite not attending the September 2019 meeting, Ms. Hernandez continued to experience severe physical, emotional, and mental distress, including panic attacks and shutdown, over the next several weeks and was forced to take time off work and rely on others to care for her.

27. Since her election to the Board, Ms. Hernandez has experienced tremendous physical, mental, and emotional suffering as a result of the Defendants' refusal to reasonably modify their procedures, to provide her effective communication, and to accommodate her. As a result of repeatedly being unable to understand what was being said verbally, she has experienced sensory dysregulation that has left her unable to communicate verbally, causing increased anxiety and depression. She has been forced to miss work and undergo hospitalization and increased therapy. At times, she has been forced to become dependent on her spouse for care, leaving him responsible not only for her well-being, but also that of their children.

## COUNT I
### Violations of Title II of the Americans with Disabilities Act
### 42 U.S.C. § 12131, *et seq.*

28. Plaintiff Sarah Hernandez incorporates the allegations in the preceding paragraphs, as if alleged herein.

29. Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, and 28 C.F.R. Part 35 guarantee equal access for qualified individuals to the benefits of the services, programs and activities of a public entity.

30. Title II of the ADA mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

31. In addition, a public entity may not, on the basis of disability, "[d]eny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards[.]" 28 C.F.R. § 35.130(b)(1)(vi).

32. Public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

33. In addition, public entities have a duty to ensure that communications with persons with disabilities are "as effective as communications with others." *Id.* § 35.160(a)(1).

34. Such public entities "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160(b)(1).

35. Further, it is unlawful for public entities to discriminate against any individual because that individual has opposed any act or practice of discrimination under Title II. *Id.* § 35.134(a).  It is unlawful for any public entity to "coerce, intimidate, threaten, or interfere with" an individual on the basis of her exercise of any right granted under Title II, including the rights to reasonable accommodations and effective communication. *Id.* § 35.134(b).

36. Defendants are public entities under Title II of the ADA.

37. Board membership, executive sessions, and meetings are services, programs, or activities of Defendants.

38. Ms. Hernandez is an individual with a disability under the ADA. Ms. Hernandez's disabilities, namely autism and hearing loss, substantially interfere with the major life activities of hearing, communicating, interacting with others, and sensory processing, among others.

39. Ms. Hernandez was elected to serve as a member of the Board and thus is a qualified individual entitled to the protections of the ADA.

40. Defendants have failed and continue to fail to meet their obligations to provide Ms. Hernandez with opportunities that are equal to those provided to Board members without disabilities. Defendants have excluded her from participation in and denied her the benefits of their services, programs, or activities and have denied her the opportunity to participate as a member of the Board.

41. Defendants have failed to provide auxiliary aids and services to ensure equally effective communication with Ms. Hernandez and have failed to reasonably modify their policies, practices, and procedures as necessary to accommodate Ms. Hernandez.

42. Defendants' actions constitute intentional discrimination on the basis of disability in violation of the ADA, in that they have:

    A. failed to maintain policies and procedures to ensure compliance with Title II, specifically policies that provide equal access and effective communication to individuals with disabilities;

    B. failed to ensure that communications with Ms. Hernandez were as effective as communications with non-disabled members and to provide auxiliary aids and services necessary for effective communication;

    C. failed to provide reasonable modifications of policies, practices, and procedures to prevent discrimination;

D. failed to provide opportunities and information in a manner that is timely, equally effective, and equally integrated; and

E. otherwise discriminated, coerced, intimidated, and retaliated against Ms. Hernandez, including by excluding her from executive session on June 19, 2019, and subsequent confidential discussions and by denying her access to information given to other Board members.

43. As a result of Defendants' actions, Ms. Hernandez has suffered and continues to suffer irreparable harm.

44. The actions by Defendants were undertaken intentionally or with deliberate indifference to the protected rights of Ms. Hernandez.

45. Defendants' failure to meet their obligations to Ms. Hernandez constitute an ongoing and continuous violation of the ADA and its supporting regulations. Unless restrained from doing so, Defendants will continue to violate the ADA. Unless enjoined, Defendants will continue to inflict injuries for which Ms. Hernandez has no adequate remedy at law.

46. Unless the requested relief is granted, Ms. Hernandez will suffer irreparable harm in that Defendants' discrimination deters her from running for re-election to the Board, despite requests from political parties that she do so.

47. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

48. Ms. Hernandez is entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Ms. Hernandez is also entitled to compensatory damages.

## COUNT II
## Violations of § 504 of the Rehabilitation Act of 1973
## 29 U.S.C. § 794

49. Plaintiff Sarah Hernandez incorporates by reference all allegations contained in the preceding paragraphs, as if alleged herein.

50. Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

51. Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . ." *Id.* § 794(b)(1).

52. Such federally funded programs and activities must provide aids and services that "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 34 C.F.R. § 104.4(b)(2).

53. Furthermore, recipients of federal funds must provide individuals with disabilities aids, benefits, and services that are as effective as those provided to persons without disabilities. *Id.* § 104.4(b)(1)(iii).

54. Defendants receive federal grants, contracts, and other financial assistance, thereby subjecting themselves to the requirements of Section 504.

55. Ms. Hernandez has multiple disabilities and was elected to membership on the Board. She is therefore a qualified individual with a disability under Section 504.

56. Defendants have, solely by reason of her disability, excluded Ms. Hernandez from participation in and denied her the benefits of or otherwise discriminated and retaliated against her in their facilities, services, programs, or activities. Defendants' violation of Section 504 and its regulations has denied and continues to deny Ms. Hernandez an equal opportunity to participate in membership on the Board.

57. Defendants' actions constitute intentional discrimination on the basis of a disability in violation of Section 504, in that Defendants have:

    A. failed to maintain policies and procedures to ensure compliance with Section 504, specifically policies that provide equal access and effective communication to individuals with disabilities;

    B. failed to ensure that communications with Ms. Hernandez were as effective as communications with non-disabled members and to provide auxiliary aids and services to ensure effective communication;

    C. failed to provide reasonable modifications of policies, practices, and procedures;

    D. failed to provide opportunities and information in a manner that is timely, equally effective and equally integrated; and

    E. otherwise discriminated and retaliated against Ms. Hernandez, including by excluding her from executive session on June 19, 2019 and subsequent confidential discussions and by denying her access to information given to other Board members.

58. As a result of Defendants' actions, Ms. Hernandez has suffered and continues to suffer irreparable harm.

59. The actions by Defendants were done intentionally or with deliberate indifference to the protected rights of Ms. Hernandez.

60. By failing to meet their obligations to provide persons with disabilities with opportunities to participate and serve that are equal to those provided to members of the Board without disabilities, Defendants have and are excluding Ms. Hernandez from participating in and enjoying the benefits of the services, programs, or activities offered by the Board. Ms. Hernandez is entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Ms. Hernandez is also entitled to compensatory damages.

## CLAIMS FOR RELIEF

61. WHEREFORE, Plaintiff Sarah Hernandez demands judgment against the Defendants as follows:

   (a) A preliminary and permanent injunction prohibiting Defendants from violating Title II of the ADA and Section 504;

   (b) A declaration that Defendants have violated and continue to violate Title II of the ADA and Section 504;

   (c) An award of Ms. Hernandez's compensatory damages;

   (d) An award of Ms. Hernandez's reasonable attorney's fees and costs; and

   (e) Such other and further relief as the Court may deem just.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial.

Respectfully submitted this 3rd day of December 2019.

By: /s/        Kasey Considine
KASEY CONSIDINE (Fed. Bar No. CT 30756)
Disability Rights Connecticut
846 Wethersfield Avenue
Hartford, CT  06114
Phone: (860) 297-4300
Fax: (860) 296-0055
E-mail:  kasey.considine@disrightsct.org

Eve L. Hill (Fed. Bar No. MD 19938)
(*Applying for Pro Hac Vice Admission*)
Anthony May (Fed. Bar No. MD 20301)
(*Applying for Pro Hac Vice Admission*)
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 1700
Baltimore, MD 21202
Phone: (410) 962-1030
Fax: (410) 385-0869
E-mail: ehill@browngold.com
E-mail: amay@browngold.com

*Attorneys for Plaintiff*