UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SARAH HERNANDEZ<br>    *Plaintiff*,<br><br>v.<br><br>ENFIELD BOARD OF EDUCATION,<br>TOWN OF ENFIELD, AND WALTER<br>KRUZEL, Chairman of the Enfield<br>Board of Education (in his official<br>capacity),<br>    *Defendants.* | 3:19-CV-1907 (OAW) |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the court upon Defendants' Motion for Summary Judgment ("Motion"). *See* ECF No. 77. The court has reviewed the Motion, Defendants' Statement of Facts ("Defendants' SOF"), *see* ECF No. 77-2, Plaintiff's Memorandum in Opposition to the Motion, *see* ECF No. 83, Plaintiff's Statement of Facts ("Plaintiff's SOF"), *see* ECF No. 83-1, Defendants' Reply in support of the Motion, *see* ECF No. 88, all supporting exhibits, and the record in this matter and is thoroughly advised in the premises. For the reasons discussed herein, the court grants in part the Motion.

**I.    BACKGROUND**[1]

Plaintiff was elected to the Enfield Board of Education (the "Board") in 2017. ECF No. 83-1 at p. 1, ¶ 1 and response. She is hearing impaired and has Autism Spectrum Disorder ("ASD"). *See* ECF No. 77-1 at p. 2; ECF No. 83 at p. 2.[2] She made no secret of these conditions during her campaign, and it is undisputed that she informed her fellow

---

[1] Because Plaintiff's SOF reproduces the factual allegations laid out in Defendants' SOF, the court generally will cite only to the former for ease of review.
[2] Neither Statement of Facts specifically asserts that Plaintiff has these conditions, but all briefings submitted in relation to the Motion assume this fact. It is not in dispute.

Board members of her disabilities shortly after the start of her term, and in some cases, even before her election.  ECF No. 83-1 at p. 4-5, 7, ¶¶ 12-13, 22 and responses.

The parties dispute what accommodations Plaintiff requested, when she made those requests, and whether accommodations actually were provided.[3]  It is undisputed, though, that at the first meeting of Plaintiff's term, Plaintiff was permitted to select her own seat between two more senior members so that she could exchange notes with them when she needed clarification or when she had questions, and that she asked members to face her when they spoke so that she could see their mouths moving.  ECF No. 83-1 at p. 9, ¶¶ 26-28 and responses.  However, Plaintiff asserts that Board leadership never requested or required members of the Board to exchange notes with her or turn to face her when they spoke, and the extent to which members did so was not an accommodation, but simply individuals voluntarily assisting Plaintiff when she asked them to.  *Id.*  It also is undisputed that all members of the Board were provided with iPads at the beginning of the term and with packets of relevant information for each general session.  ECF No. 83-1 at p. 8, ¶ 24-25 and responses.  Plaintiff asserts that these also were not accommodations, as they were provided to all members irrespective of disability.  *Id.*  Defendants assert that Plaintiff was permitted to take and to keep notes during

---

[3] Defendants specifically note in Defendants' SOF that although the Board maintained an Americans with Disabilities Act policy that identified the proper person to whom accommodations requests should be brought and provided an official form with which to make such requests, Plaintiff never followed the process outlined in that policy.  ECF No. 83-1 at p. 9, ¶¶ 26-28.  Plaintiff responds that the policy, by its own language, does not apply to members of the Board, and she points to considerable record evidence to support her position.  ECF No. 83-1 at p. 9, ¶¶ 26-28 and responses.  Defendants concede that they were aware of Plaintiff's conditions when she started her term, and it is settled law that where a disability is known, a covered entity is obligated to engage in "an interactive process" to see if the disability can be accommodated, even without being formally informed of the disability.  *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020).  Thus, the relevance of any Board ADA policy is unclear.  As Defendants make no argument which relies upon the applicability of the policy to the Board, the court will not devote any discussion to it.

executive sessions, but Plaintiff denies this assertion.  ECF No. 83-1 at p. 10, ¶ 29 and response.[4]

Plaintiff asserts that, in addition to her requests that she be permitted to pass clarifying notes during meetings and that members be required to face her when they spoke, she also requested that members communicate with her in writing outside of meetings, and that she be provided with written materials during executive sessions to help her follow discussions.  ECF No. 83-1 at p. 26-27, ¶ 4.  She claims that she made requests for these accommodations via the proper procedure as it was described to her, by informing Minority Leader Timothy Neville of her needs (on several occasions).  ECF No. 83-1 at p. 27, ¶¶ 6-7, p. 28, ¶ 15.  She alleges that he responded that he would not communicate with her in writing or provide documentary aids during executive sessions, partly because of confidentiality concerns.  *Id.*  Plaintiff further asserts that Mr. Neville never brought her requests to Chairman Walter Kruzel, who also refused to communicate with her in writing.  ECF No. 83-1 at p. 29, ¶¶ 16-17.  While it is undisputed that Plaintiff at times did communicate with the Board via telephone, the parties disagree on how often this occurred and the circumstances surrounding these phone calls.  ECF No. 83-1 at p. 5-6, ¶ 15-16 and responses.

Whether or not Plaintiff made requests on any other occasion, it is undisputed that in February 2019, Plaintiff and Minority Leader Neville had a heated exchange, via text and voice message, partly over whether Minority Leader Neville would agree to

---

[4] It appears that the Chairman of the Board briefly looked into the availability of Communication Access Realtime Translation ("CART").  ECF No. 83-1 at p. 28, ¶¶ 9-10.  The court need not discuss CART in this analysis because it is undisputed that Plaintiff never asked for it, *see id.*, and aside from noting that it would not have been too costly for the Board, does not now argue she should have been provided it.

3

communicate with Plaintiff in writing. ECF No. 83-1 at p. 13-16, ¶¶ 41-50 and responses.[5] The parties all agree that, also in February 2019, at a caucus meeting, Plaintiff specifically requested that Board members communicate with her in writing and that written aids be provided to her during executive sessions. ECF No. 83-1 at p. 17, ¶ 52 and response.[6] The parties also agree that in that same month, Plaintiff asked to meet with Chairman Kruzel and Superintendent Chris Drezek about her requested accommodations, and that the three did meet in March 2019. ECF No. 83-1 at p. 18, ¶¶ 54-55 and responses. It is further undisputed that at the end of that meeting, Superintendent Drezek agreed that he would provide Plaintiff with documentary aids for executive sessions. *Id.* Plaintiff asserts that Chairman Kruzel also suggested using a whiteboard during executive sessions for Plaintiff to exchange notes, but that no such whiteboard ever was provided. ECF No. 83-1 at p. 29, ¶ 22; p. 30, ¶¶ 25-26.

Defendants assert that after the March 2019 meeting, Superintendent Drezek did prepare and provide Plaintiff with documentation for all executive sessions save one, which Plaintiff was unable to attend in person due to familial obligations. Plaintiff asserts, though, that she was not provided with documentary aids when anyone other than Superintended Drezek was addressing the Board during executive sessions. ECF No. 83-1 at p. 19, ¶ 58 and response.

---

[5] Defendants' SOF devotes a notable amount of space to describing the alleged incident that led to this exchange, but those details are irrelevant to the question of whether summary judgment is appropriate, and therefore, the court will not discuss those details in this analysis.
[6] Defendants' SOF states that this caucus meeting happened in spring of 2019, but the supporting citations indicate that the meeting occurred in February.

Things came to a head in June 2019,[7] when the Board heard from its attorney, Christine Chinni, during an executive session. ECF No. 83-1 at p. 22, ¶69, p. 23, ¶72 and responses. The parties dispute what Attorney Chinni said during that meeting. Defendants assert that Attorney Chinni discussed some civil rights claims that were then pending against the Board, and that Plaintiff mistakenly believed that Attorney Chinni formally was denying her requests for accommodations and was instructing the other members of the Board to limit communications with Plaintiff. ECF No. 83-1 at p. 23-24, ¶¶ 72-76. Plaintiff asserts that Attorney Chinni in fact did say these things, and that Plaintiff's only misunderstanding was that she thought she was being dismissed from the Board. ECF No. 83-1 at p. 22-23, ¶¶ 71-76 and responses, p. 31, ¶ 33. Despite the lack of consensus over Attorney Chinni's initial remarks, it is undisputed that Plaintiff left after them, and that she did not return to another Board meeting. ECF No. 83-1 at p. 24, ¶ 75, p. 25-26, ¶ 81 and response.

Plaintiff asserts that she experienced severe dysregulation and emotional distress as a result of her treatment by the Board such that she could no longer participate as a member of the Board and was required to seek medical attention including hospitalization. ECF No. 83-1 at p. 32-33, ¶¶ 38-46.

## II. LEGAL STANDARD

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

---

[7] Also this month, Plaintiff made public comments during a general session in which she referenced difficulties she had experienced securing accommodations for her disabilities, but these comments are irrelevant here and therefore will not be discussed. ECF No. 83-1 at p. 20-21, ¶¶ 64-65 and responses.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  The movant bears the burden of demonstrating that there is no genuine issue of material fact.  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir.1997)).  If "there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Id.*

To defeat a summary judgment motion, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998).  Rather, the nonmoving party must point to "specific facts in dispute to show that there is a *genuine issue for trial*." *Matsushita,* 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," then summary judgment still may be granted.  *Horror Inc. v. Miller*, 15 F.4th 232, 240–41 (2d Cir. 2021).

When the nonmoving party ultimately will bear the burden of persuasion at trial, the moving party may show that summary judgment is appropriate in two ways: (1) by submitting evidence that negates an essential element of the opposing party's claim, or (2) by demonstrating that the opposing party's evidence is insufficient to establish an essential element of their claim.  *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988).

When reviewing a summary judgment motion, the court construes the cited evidence in the light most favorable to the nonmoving party and "resolves all ambiguities and draws all reasonable inferences against the moving party." *Horror*, 15 F.4th at 240.

## III. DISCUSSION

### a. *Plaintiff's SOF*

Before addressing the parties' main arguments, the court must resolve an issue Defendants raise in their Reply regarding whether Plaintiff's SOF effectively denies any of the facts asserted in Defendants' SOF. Defendants argue that Plaintiff essentially has admitted each and every of Defendants' asserted facts because her denials are either impermissible qualified denials or are unsupported by credible, admissible evidence, rendering them all, in effect, admissions. Defendants further argue that through these ineffective denials, Plaintiff has admitted to a number of facts which Defendants contend should be dispositive of her claims. The court disagrees with Defendants.

First, it is unclear that partial denials or qualified admissions are prohibited under either the Federal Rules of Civil Procedure or the Local Rules. Defendants cite no authority for this proposition, and a review of the relevant Rules shows they contain no language which prohibits the contextualization of admissions. Further, the court notes that there are circumstances where contextualization is appropriate and helpful, such as when Plaintiff admitted that she did have phone conversations with members of the Board, but disagreed that they were "often," as Defendants had asserted. She clearly did not agree with that statement as Defendants had phrased it, but she could not have flatly denied it without creating some confusion as to what actually remains in dispute. A

degree of qualification may be improper in a Local Rule 56(a)2 statement of facts, but the court finds that such de minimus equivocation as is found in Plaintiff's SOF does not run afoul of the Rules, particularly as all her responses are followed by specific citations to the record.  Therefore, the court declines to treat as admissions the qualified responses in Plaintiff's SOF.  *See Silano v. Hammel*, No. 3:17-CV-01498 (KAD), 2019 WL 1385092, at *1 n. 1 (D. Conn. Mar. 27, 2019), aff'd, 809 F. App'x 57 (2d Cir. 2020) (deeming qualified responses as admissions *because they were not supported by citations to the record* in compliance with Local Rule 56(c)).

Defendants also argue that certain of Plaintiff's denials should be deemed admissions because they are not followed by citations to admissible supporting evidence, as is required by Local Rule 56.  Of course, as always is the case when reviewing a motion for summary judgment, where a denial is not supported by cited evidence, the court may deem the denial an admission.  *Id.*  However, the only specific examples Defendants give in their Reply are denials that are "based on [Plaintiff's] perception of the states of mind of others," such as when she denied Defendants' assertion that Superintendent Drezek intended to give her a written transcript of his statement at the May 1, 2019, Board meeting.  Regardless, any facts asserting the states of mind of others are immaterial to the court's present review, so the court need not refer to Plaintiff's responses to these assertions at all (whether or not they should be deemed admissions).

Finally, Defendants argue that Plaintiff's affidavit should be disregarded as supporting evidence because it is a sham, drafted solely to contradict previous deposition testimony and to create the illusion of a genuine issue of fact.  The court finds that parts of Plaintiff's affidavit indeed clearly contradict her previous testimony; to the extent that

any denial solely rests on clearly contradictory attestations in Plaintiff's affidavit, the court will deem those denied facts as admissions.

However, the great majority of Plaintiff's denials are effective, and even considering the denials deemed admitted (due to insufficient supporting citation), the sum of her admissions is not dispositive of her claims, contrary to the Defendants' assertions.

### b. *Genuine issues of material fact persist*

Turning to the substantive arguments presented in the Motion and Plaintiff's opposition thereto, Plaintiff asserts two Counts in her Complaint: violation of the Americans with Disabilities Act ("ADA") and violation of Section 504 of the Rehabilitation Act ("Section 504"). The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity . . . ." 42 U.S.C. § 12132. Section 504 similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in . . . any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

The parties agree that, for the purposes of this action, the elements for each of these claims is the same. Plaintiff's claims for failure to accommodate under Section 504 and the ADA require her to show (1) that she is a "qualified individual" under both statutes; (2) that Defendants are subject to the ADA and, for the Section 504 claim, that they are federally funded; and (3) that she was denied the opportunity to participate in Board activities by reason of her disabilities. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). It is undisputed that Plaintiff is a "qualified individual" with a disability, and that

Defendants are subject to both the ADA and Section 504. The only question, then, is whether Plaintiff was denied the opportunity to participate as a member of the Board by reason of her disabilities.

Defendants assert that Plaintiff has not shown that she was denied an equal opportunity to participate on the Board because (1) she appeared to be able to function without her requested accommodations, and (2) she was assisted by some of the Board members on an ad hoc basis. Furthermore, Defendants argue that even if she was denied the opportunity to equally participate on the Board, her requests need not have been honored because they would have caused undue burden to the Board. Defendants contend that Plaintiff's grievance is not with her accommodations or lack thereof, but with political frustrations she experienced during her term.

The court finds none of these arguments persuasive. Regarding Defendants' first argument, even if Plaintiff effectively was able to function without accommodations (when she was forced or required to do so), she still might have been entitled to them. The ADA is clear that a "qualified individual" is someone who, *with or without* the provision of auxiliary aids and services, meets the essential eligibility requirements to participate in a public entity's programs or activities. 42 U.S.C.A. § 12131. The court concludes from this language that the statute itself clearly indicates that those who *can* perform a task, though perhaps with difficulty or greater effort than the average person, still are entitled to accommodations. *See Bell v. O'Reilly Auto Enterprises, LLC*, 972 F.3d 21, 24 (1st Cir. 2020), cert. denied, 141 S. Ct. 2755, 210 L. Ed. 2d 904 (2021) (finding in the analogous employment context that "[a]n employee who can, with some difficulty, perform the essential functions of his job without accommodation remains

10

eligible to request and receive a reasonable accommodation."); *see also*, *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 807 (1999) (noting that the appropriate inquiry is whether a plaintiff can perform his essential job functions *with or without* reasonable accommodations); U.S. EEOC, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA*, Oct. 17, 2002, "General Principles" at Examples B and C, available at: https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada#burdens (last visited Sept. 4, 2022). So even if Defendants' proposition were true, and Plaintiff did not absolutely require accommodations to perform her role on the Board, she still would be able to state a claim under the ADA and Section 504 for failure to accommodate.  Defendants' argument to the contrary therefore is unpersuasive.

Defendants' second argument is similarly unconvincing.  Although they assert that members turning to face Plaintiff when she so requested and responding to notes when she had questions qualified as "accommodations," they also admit that these "accommodations" were "pursuant to [P]laintiff's informal and casual requests based on her needs in the moment . . ., or were provided *voluntarily* by members . . . ." ECF No. 77-2 at 22 (emphasis added).  It is therefore not clear if these actions qualified as "accommodations" within the meaning of the statutes, and even if they did, Plaintiff asserts that these alone did not ensure that she was able to equally participate, and that she made additional requests for accommodations that were ignored or denied.  The court finds that there are still genuine disputes of fact as to whether Plaintiff requested accommodations earlier than February 2019, what accommodations were requested,

whether those requests for accommodations were denied, and whether the voluntary assistance sometimes provided by other members were bona fide accommodations provided by the Board, or simply civil responses to Plaintiff's ad hoc solicitations for aid. These disputes alone would prevent the grant of summary judgment. Defendants' second argument therefore also fails.

Even setting aside these issues of fact, however, the court finds that the undisputed facts, themselves raise a litigable issue that militates against granting summary judgment. It is undisputed that Plaintiff *did* request additional accommodations of Chairman Drezek and Superintendent Kruzel in March 2019, that they in fact *did* agree to provide at least some of those accommodations, and that they *did not* provide the promised written documents at the June 2019 executive session where Attorney Chinni addressed the Board,[8] which, per Defendants' account of events, led to Plaintiff's misunderstanding Attorney Chinni's remarks and inability to participate in the Board's activities that evening (equally or otherwise), as she left believing she had been dismissed from the Board.  A reasonable jury could find from these facts that the Board had committed itself to providing reasonable accommodations, that it failed to provide them, and that Plaintiff suffered injury resulting from that failure.

Furthermore, however, the court finds that there is considerable record evidence from which a jury reasonably could find that Attorney Chinni *did* instruct the Board that they were under no obligation to accommodate Plaintiff's disabilities, and more than that, that they *should not* communicate with Plaintiff using her preferred methods. Plaintiff has cited to the affidavits of Chairman Kruzel, Superintendent Drezek, and Assistant

---

[8] In their Reply, Defendants admit that "[P]laintiff was not provided with a copy of Attorney Chinni's remarks" at that meeting.  ECF No. 88 at 10.

12

Superintendent Andrew Longey, all of which explicitly state that Attorney Chinni attended the June 2019 meeting in order to provide the Board with legal advice regarding its obligations to Plaintiff under the ADA.  Plaintiff also asserts that Attorney Chinni met privately with Chairman Kruzel and Superintendent Drezek, at which time they decided that Attorney Chinni would discuss Plaintiff's accommodations request at the Board meeting later that day.  ECF No. 83-1, p. 31, ¶32; ECF No. 83-29 at ¶6.  Plaintiff also has pointed to the agenda for that Board meeting, and it includes "personnel questions" as a topic of discussion; that topic otherwise has not been explained (if, in fact, it was supposed to be a discussion of something other than the Board's legal obligations to Plaintiff).[9]

The record citation which is perhaps most probative of this issue is the transcript of proceedings held before the Honorable Judge Michael Shea, who presided over this case before its transfer to the undersigned.  In that transcript, Attorney Chinni, herself, clearly stated on the record in this action that she *did* have a discussion at the June 2019 meeting with members of the board about what she regarded as the proper and lawful manner for them to communicate with Plaintiff.  ECF No. 55 at 6.  She explicitly told His Honor that she "was advising the Board, including [Plaintiff], of what the law required them to do in terms of accommodations." *Id.* at 10.  Based on these admissions, a reasonable juror could credit Plaintiff's version of events and find that Defendants unreasonably declined to accommodate Plaintiff in violation of the ADA and Section 504.

---

[9] In the Motion, even Defendants admit that there were three items on the agenda for executive session that June 2019 meeting: (1) matters related to attorney/client privilege, (2) matters related to personnel, and (3) matters related to the Superintendent's evaluation.  Defendants explain that the first item pertained to pending civil rights complaints against the Board, and that the third related, of course, to the Superintendent's evaluation.  But Defendants do not explain what personnel matters were to be discussed if not Plaintiff's requests for accommodations.  ECF No. 77-1 at p. 14-15.

The court also notes that this same evidence rebuts Defendants' implied argument that Plaintiff cannot show deliberate indifference, which is an additional element of a claim for damages under both the ADA and Section 504.  The Defendants state in the heading of section III.b of the Motion that Plaintiff cannot show her "intentional discrimination claims," assumedly referring to this additional element, *see Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) ("[M]onetary damages are recoverable only upon a showing of an intentional violation."), *Butchino v. City of Plattsburg*, No. 820CV796MADCFH, 2022 WL 137721, at *9 (N.D.N.Y. Jan. 14, 2022) ("[I]n order to recover damages under Title II of the ADA and the Rehabilitation Act, the plaintiff must show that the discrimination was intentional."), *Stamm v. New York City Transit Auth.*, No. 04-CV-2163 SLT JMA, 2013 WL 244793, at *1 (E.D.N.Y. Jan. 22, 2013) (using the same standard to show intentional discrimination under both the ADA and Section 504), but Defendants do not proceed to develop any argument on that point.  Plaintiff, on the other hand, responded to the suggestion of the argument in the heading, so the court also will address it to note that should a jury credit Plaintiff's account of the June 2019 meeting, then it also reasonably could infer the intent necessary to award damages.  The Second Circuit has determined that the intent element is satisfied where a plaintiff can show that a "policymaker acted with at least deliberate indifference to the strong likelihood [of] a violation of federally protected rights . . . ." *Loeffler*, 582 F.3d at 275.  Deliberate indifference can be inferred where (1) an official has authority to address some alleged discrimination, (2) that official has actual knowledge of discrimination, and (3) that official fails to respond adequately.  *Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019).  Here, Plaintiff has alleged that Board Leadership, specifically Superintendent Kruzel and

14

Chairman Drezek, knew of Plaintiff's disabilities, had been made aware at least as of March 2019 that she was in need of accommodations, had even agreed to provide certain accommodations, and then made a deliberate decision to violate that agreement and to deny Plaintiff accommodations entirely.  These allegations are more than sufficient to carry Plaintiff's burden with respect to the intent element.  To the extent Defendants intended to argue to the contrary, such argument is rejected.

Finally, the court also rejects Defendants' contention that providing the requested accommodations would have imposed an undue hardship on the Board.  Under the ADA and Section 504, a defendant is not required to provide accommodations that are unreasonable or that impose an undue hardship on its operation; it is only required to make a *reasonable* accommodation.  *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 186-87 (2d Cir. 2015);  *Borkowski v. Valley Cent. School Distr.*, 63 F.3d 131, 136 (2d Cir. 1995).  An "undue hardship" is an action requiring significant difficulties or expense when considered in light of a number of factors, including the nature and cost of the accommodation, the impact of that accommodation upon the facilities involved, the overall resources of the covered entity, and the type of operation of the covered entity.  42 U.S.C. § 12111(10); *see also* 34 C.F.R. § 104.12(b); 45 C.F.R. § 84.12(b).  "Undue hardship" is a relational term in that "it looks not merely to the costs that the [covered entity] is asked to assume, but also the benefits to others that will result." *Stone v. City of Mount Vernon*, 118 F.3d 92, 98 (2d Cir. 1997).

Defendants assert that Plaintiff's requested accommodations would pose undue hardship because having written materials in executive sessions would compromise confidentiality.  Defendants also argue that the benefit of Plaintiff's requested

accommodations would be limited, since Plaintiff operated fine without them. Defendants' latter argument is controverted by their own account of events at the June 2019 meeting, though. Plaintiff clearly did not operate fine without written materials in executive sessions because absent that accommodation, according to Defendants, Plaintiff grossly misunderstood the proceedings such that she left believing she had been dismissed from the Board entirely. And Defendants' former argument is belied by the fact that at the March 2019 meeting they actually did commit themselves to providing documentary materials at executive sessions, so Defendants clearly felt that the issue of confidentiality could be managed.[10] Moreover, it is not clear to this court that the confidentiality concerns could not have been addressed while still providing Plaintiff with her requested accommodations, particularly since Defendants apparently made no attempt to re-engage in the "interactive process" with Plaintiff in an effort to find a creative solution to the challenge presented by confidential information. Finally, Defendants do not address how Plaintiff's request for written communications presented an undue hardship, unless the court is supposed to infer that Defendants intended to (but did not) develop an argument that privilege concerns would have created an undue hardship. Accordingly, Defendants do not satisfy their burden of persuading the court that the accommodation was unreasonable after assessment through any cost-benefit analysis.

Finally, Defendants argue that Plaintiff's distress was not caused by any conduct by the Board, but by other stressors in her life. They point to a number of other factors they assert precipitated Plaintiff's need for medical intervention. They assert that Plaintiff

---

[10] There is some argument regarding whether the Board should have sent Plaintiff soft copies of confidential information for a meeting she was unable to attend in person, but Defendant's argument of undue hardship clearly fails even before reaching that question, so the court need not discuss the question of soft copies.

16

has failed to show that the Board's conduct proximately caused her any injury. Plaintiff responds, convincingly and with supporting authority, that the Second Circuit has concluded that a qualified individual can bring a claim under the ADA and Section 504 for unlawful exclusion from a program or activity "even if there are other contributory causes for the exclusion or denial, as long as the plaintiff can show that the disability was a substantial cause of the exclusion or denial . . . ." *Henrietta D.*, 331 F.3d at 291. The court finds that Plaintiff has adduced sufficient evidence from which a reasonable jury could conclude that her disability was a "substantial cause" of her exclusion from fully participating in Board activities. For that reason, this argument also fails.

### c. *Claims against Chairman Kruzel*

The court agrees with Defendants that they are entitled to summary judgment with respect to the claims asserted against Chairman Kruzel. Defendants argue that asserting claims against Chairman Kruzel is redundant because Plaintiff also has asserted her claims against the Board and the Town of Enfield. Because she asserts the claim against Chairman Kruzel in his official capacity, and official capacity claims effectively are claims against the municipal entity, functionally she has stated duplicative claims. *See Scalercio-Isenberg v. Port Auth. of New York*, No. 16-CV-8494 (VSB), 2018 WL 1633767, at *6 (S.D.N.Y. Mar. 31, 2018) ("Because Defendant Foye in his official capacity acts as a representative of the Port Authority, which is also named as a defendant here, there is no reason to permit duplicate claims to proceed against both parties."), *Fowler v. Dep't of Correction*, No. 3:18-CV-01635 (JAM), 2019 WL 2176304, at *3 (D. Conn. May 20, 2019)

(dismissing official capacity claims as redundant to claims against a state agency).  Thus, summary judgment is granted only as to the claims asserted against Chairman Kruzel.

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment is **GRANTED in part**.

    a. Summary judgment is **GRANTED** with respect to Counts One and Two only insofar as they are asserted against Defendant Walter Kruzel.  Defendant Walter Kruzel hereby is dismissed from this action.

    b. Summary judgment is **DENIED** with respect to Counts One and Two insofar as they are asserted against the Enfield Board of Education and the Town of Enfield.

2. The parties are instructed to submit a joint status report on or before **September 30, 2022**, indicating (1) how long they anticipate trial will take, and (2) whether they are interested in a referral to a United States Magistrate Judge for a settlement conference.

**SO ORDERED** in Hartford, Connecticut, this 8th day of September, 2022.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE