IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SARAH HERNANDEZ,<br><br>    Plaintiff,<br><br>v.<br><br>ENFIELD BOARD OF EDUCATION,<br>and THE TOWN OF ENFIELD,<br><br>    Defendants. | Civil Action No.: 3:19-CV-01907-SRU<br><br>January 11, 2024 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' FED. R. CIV. P. 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**

I.      INTRODUCTION

Plaintiff Sarah Hernandez hereby opposes Defendants', the Enfield Board of Education (the "Board") and the Town of Enfield, Fed. R. Civ. P. 50 Motion for Judgment as a Matter of Law (ECF No. 157). Defendants are not entitled to judgment as a matter of law. Contrary to Defendants' arguments, and as discussed more fully below, Ms. Hernandez has presented extensive evidence sufficient for a jury to reasonably conclude that Defendants have violated her rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq*. and under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and their respective implementing regulations, by denying Ms. Hernandez auxiliary aids and services to ensure that she received effective communications and reasonable modifications so that she could have an equal opportunity to participate as a Board member for the Town of Enfield's School Board. Plaintiff has also presented evidence sufficient for a jury to reasonably conclude that in failing to provide Ms. Hernandez with effective communications, Defendants acted with deliberate indifference to her support needs. Finally, Ms. Hernandez has presented sufficient evidence for a

jury to reasonably conclude that, as a result of Defendants' failure to provide her with the needed supports to ensure that she received effective communications and reasonable modifications, she suffered physical pain and that she is entitled to an award of damages.[1]

## II.     ARGUMENT

A. *Applicable Standard*

Fed. R. Civ. P. 50 requires that:

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

When considering such a motion, Courts must courts must "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in [its] favor from the evidence." *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (citation omitted). In performing this function, a "court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury," and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* (citation omitted).

For the reasons discussed below, Defendants have failed to show in their Motion that Ms. Hernandez has not met her burden to present evidence sufficient for the jury to find defendants

---

[1] Ms. Hernandez has also proven that she is entitled to declaratory and injunctive relief.

2

liable for violations of the ADA and Section 504, that Defendants acted with deliberate indifference, and that Ms. Hernandez is entitled to damages as a result of Defendants' unlawful actions. Therefore, Defendants' motion should be denied.

- B. *Plaintiff Has Presented Sufficient Evidence Under Controlling Law to Justify a Favorable Finding on Her Claims Against Defendants of Disability Discrimination Under the ADA and Section 504.*

    1. <u>Plaintiff has presented sufficient evidence upon which the jury could reasonably conclude that Defendants violated Title II of the ADA and Section 504 of the Rehabilitation Act</u>.

To successfully bring a Title II ADA and Section 504 claim, and individual must show: (1) he or she is a "'qualified individual' with a disability"; (2) "that the defendants are subject to the ADA" or Section 504; and (3) that the plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities," or was "otherwise discriminated against by defendants, by reason of plaintiff['s] disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citation omitted).

Here, Ms. Hernandez presented undisputed evidence that she is a qualified individual with a disability, and the Court's jury instruction requires the jury to make such a factual finding. Additionally, the parties stipulated at trial that Defendants are subject to both the ADA and Section 504. Further, Ms. Hernandez presented extensive evidence that by reason of such disability, she was excluded from participation in the services, programs, or activities of the Town of Enfield and its Board of Education as a result of Defendants' failure to provide her with the appropriate auxiliary aids and services to have effective communications to ensure she had equal access to participate in its School Board meetings, including its regular and special meetings as well as its executive session meetings. *See* ¶¶ 2–6, below.

2. <u>The evidence showed that Defendants failed to provide Ms. Hernandez with the auxiliary aids and supports she needed to ensure she had effective communications so she could have an equal opportunity to participate as a member of the Enfield Board of Education.</u>

Ms. Hernandez established at trial that, from the outset, she had autism and was deaf and therefore needed accommodations so she could have effective communications to participate in the Enfield Board of Education meetings as a Board member. Specifically, Ms. Hernandez testified that she requested accommodations, including: having a point person with whom she could pass notes during meetings, seating in a central area in the meeting rooms so that she could better see the participants, written communications, and face-to-face communications.

Defendants incorrectly argue that "the evidence has established that Plaintiff: (1) was allowed preferential seating at Board meetings to help facilitate effective communication; (2) was allowed to pass, and was never prevented from passing, notes during Board meetings; (3) had the Board's support for her request that speakers face her, and would do so, sometimes with gentle reminders; (4) received written communications outside of meetings, when appropriate; and (5) would have been provided with written materials at executive sessions for meetings following the March 12, 2019 interactive process and request for such materials had she shown up." Defs.' Mot., ECF No. 157, at 1–2.

Defendants, however, are wrong. The evidence presented at the trial, including Ms. Hernandez's testimony, shows that Defendants did **not** provide Ms. Hernandez with all of the needed supports to provide her with effective communications and that Defendants did not reasonably modify its policies, practices, and procedures to make the School Board meeting communications accessible to her. As Ms. Hernandez and Ashley Depeau both testified, Ms. Hernandez was not provided with the supports that she needed to ensure she received effective communications. In fact, Ms. Hernandez testified that Tim Neville—a member of the Board

leadership, a fact established by the evidence at trial—continuously and actively resisted Ms. Hernandez's requests for accommodations such as communication in writing.  At one point, Ms. Hernandez testified that Mr. Neville yelled at and chastised her for making a request that he communicate in writing.

Even on the rare occasions when Defendants did provide some supports, Ms. Hernandez testified that the supports were often inconsistent and/or *ad hoc*. Also, Board members Ashley Depeau and Tina LaBlanc testified that on some occasions they, on their own initiative, tried to assist Ms. Herandez at Board meetings because they were aware that Ms. Hernandez encountered difficulty hearing and understanding. While this was thoughtful of those individual Board members, the fact that members of the Board informally assisted Ms. Hernandez with communications on occasion (such as exchanging notes and other assistance out of the kindness of their hearts does not satisfy, or even mitigate, Defendants' obligations to provide effective communications and reasonable modifications.

 Ms. Hernandez also testified that in the instances where Defendants agreed that Ms. Hernandez could have some accommodations, they, contrary to the requirements of the ADA and Section 504, placed some of the burden on Ms. Hernandez to provide her own accommodations. For example, Ms. Hernandez testified that she asked for a white board to write notes during executive session and then erase them from the board at the end of the meeting to ensure confidentiality and privilege was preserved but, as Chairman of the Board Walter Kruzel testified at his deposition, the Board expected her to provide her own white board. Kruzel Dep., ECF No. 142-7, 145:8–16.

Finally, the evidence presented at trial proved that Defendants only started providing some supports after a meeting between Ms. Hernandez, Mr. Kruzel, and Superintendent Chris

Drezek on March 12, 2019, although Ms. Hernandez had been requesting supports since 2017. And, even after Mr. Kruzel and Mr. Drezek agreed to provide Ms. Hernandez written materials in advance of the executive sessions of the Board, they did not agree to provide her with all of the other supports that she needed to have equal and effective access to Board meetings and related activities so that she could fully participate as a Board member.

    3. <u>The evidence presented demonstrated that Defendants acted with deliberate indifference with respect to Ms. Hernandez's support needs.</u>

Defendants, relying on *Fink v. New York City Department of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995), incorrectly argue that so long as an accommodation is reasonable, that is all that is required and make the conclusory statement that they provided Ms. Hernandez with reasonable accommodations and thus, Ms. Hernandez cannot, "as a matter of law," prove that Defendants acted with deliberate indifference. Defs.' Mot., ECF. No. 157, at 2.

Defendants are wrong. First, as explained herein, Defendants did not provide Ms. Hernandez with accommodations enabling her "to meaningfully participate." *See id.* Furthermore, contrary to Defendants' assertions, Ms. Hernandez has met her burden to show that Defendants acted with deliberate indifference as is required for cases brought under Title II of ADA or Section 504 seeking damages. To show deliberate indifference in the context of a Title II ADA claim, a plaintiff must show that the defendant acted with intent. A plaintiff can satisfy the intent requirement by showing that a "policymaker acted with at least deliberate indifference to the strong likelihood [of] a violation of federally protected rights . . . ." *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (citation omitted). Deliberate indifference can be inferred where (1) an official "has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf," (2) that official "has actual knowledge of

discrimination," and (3) that official "fails adequately to respond." *Biondo v. Kaledia Health*, 935 F.3d 68, 73 (2d Cir. 2019) (quoting *Loeffler*, 582 F.3d at 276).

Here, Ms. Hernandez presented evidence at trial to satisfy each of the elements required to show deliberate indifference. First, Ms. Hernandez presented evidence showing that at least some of the Board leadership were aware that she had autism and was deaf, and that she needed supports and reasonable modifications to be able to have effective communications so that she could have an equal opportunity to participate as a Board member. Ms. Hernandez testified at trial that she repeatedly asked for accommodations from the outset of her term as a Board member in 2017 until she ended her term in June of 2019. Ms. Hernandez testified that the accommodations she requested included: 1) having a point person to assist her at meetings; 2) being able to pass notes during meetings; 3) being able to communicate in writing and have written aids in executive sessions; 4) having seating in areas where she could see people's faces to better understand what they were saying; and 5) ensuring that people have their heads up and face her when talking.

Ms. Hernandez also testified that she informed Mr. Neville, for whom the evidence at trial established was a member of the Board's leadership, that she had autism and was deaf "right away" during her campaign during the summer of 2017. Ms. Hernandez also testified that she met with Mr. Drezek in summer of 2017, during which she told him about her disabilities, and that she also shared this information with her fellow Board candidates, most of whom became her fellow Board members following the 2017 election.

Ms. Hernandez further testified that she discussed her disabilities and accommodation needs on multiple occasions after she was elected to the Board and throughout her tenure on the Board. Ms. Hernandez, for example, testified that during a shared car ride to a training in

December 2017, shortly after she was elected to the Board and Mr. Neville was re-elected, she discussed her disabilities and needed supports, including her need to communicate in writing, among other necessary supports, with Mr. Neville. She also testified that she notified the other Board candidates in the Democratic Caucus of her disabilities and need for accommodations.

Additionally, Ms. Hernandez presented evidence that Mr. Kruzel, the Board Chairman, was aware of Ms. Hernandez's disabilities and need for accommodations as early as 2017. Specifically, Mr. Kruzel, in his deposition testimony which was designated and read into the record at the trial before the jury also, stated he was aware of Ms. Hernandez's disabilities and need for accommodations as early as 2017. Kruzel Dep., ECF No. 142-7, 110:9–12, 15–25.

Ms. Dupeau, a Board member from the Republican Caucus, also testified that she was aware of Ms. Hernandez's disabilities. Ms. Dupeau further testified that she believed others on the Board were aware that Ms. Hernandez had disabilities and that she needed accommodations to participate in Board meetings. In fact, Ms. Dupeau testified that she attempted to help Ms. Hernandez as she was able because she knew that the communications were difficult for her. Furthermore, Ms. Dupeau testified that she was instructed to go through her Caucus leader—in her case the Republican Caucus leader—to make any requests for assistance. That testimony was similar to Ms. Hernandez's testimony that she was instructed to go through her Caucus leader—in her case Mr. Neville—to request any assistance.

Even if Ms. Hernandez had not requested accommodations or had not done so until March 12, 2019, Defendants still had an affirmative obligation to provide Ms. Hernandez with reasonable accommodations because they were aware, or should have been aware, of her disabilities. In the Second Circuit, although an employee is generally responsible for requesting reasonable accommodations, there are certain situations under which an employer is required to

act proactively and "engage in an 'interactive process'" to accommodate the disability of an employee even if the employee "does not request specific accommodation." *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (citation omitted); *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."). These situations include instances where, as here, the employer knew or reasonably should have known that the employee was disabled. *Brady*, 531 F.3d at 135 ("We therefore hold that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled.").

This evidence is clearly sufficient for a jury to reasonably conclude that Defendants were aware of Ms. Hernandez's disabilities and her need for accommodations. Ms. Hernandez also presented sufficient evidence to show that the Defendants had the authority to act to address Ms. Hernandez's disability accommodation needs, and that they failed to do so. For example, the evidence presented at trial shows that Mr. Neville and Mr. Kruzel were both members of Board leadership and, although they knew of Ms. Hernandez's disabilities and accommodation needs and requests, they did not properly address the situation to ensure she was timely provided with the needed supports to ensure that she received effective communications. In fact, Ms. Hernandez testified that not only did Mr. Neville not act to resolve her accommodation needs, he was actively resistant to her accommodation requests.

The evidence also shows that Mr. Drezek was aware of Ms. Hernandez's disabilities as early as 2017, but he too failed to provide her with her needed accommodations at that time. It

was not until March 2019 that Mr. Drezek agreed to provide Ms. Hernandez with some of the requested accommodations.

These are just a few examples of the testimony and other evidence presented at trial demonstrating that Defendants failed to fulfil their legal obligations to reasonably modify their policies, practices, and procedures and provide Ms. Hernandez with auxiliary aids and supports so she could have an equal opportunity to participate in Board meeting and related activities and serve as a member of the Board and that, in so failing, Defendants acted with deliberate indifference.

4. <u>The video presented by Defendants does not prove Defendants afforded Ms. Hernandez effective communications or reasonable modifications, or that Ms. Hernandez had an equal opportunity to participate in Board meetings.</u>

Defendants also inaccurately assert that the videos they showed the jury during their cross-examination of Ms. Hernandez proved that Defendants provided auxiliary aids and services to Ms. Hernandez and/or that she was able to effectively communicate during the Board meetings. Defs.' Mot., ECF No. 157, at 2–3.  These videos, however, do nothing of the sort.

First, Defendants showed only a few short excerpts of a select handful of videos of public portions of regular Board meetings that amounted to a small portion of the many hours and minutes of Board meetings. Thus, it can hardly be said that these video clips were demonstrative of Ms. Hernandez's abilities or her need for accommodations.

Additionally, none of the videos were of any "special meetings" or portions of the executive sessions of Board meetings. This is significant because Ms. Hernandez testified that she experienced particular difficulty due to not being provided the needed supports during these meetings—particularly in executive sessions— and therefore was unable to fully participate in those meetings. As Ms. Hernandez testified, these meetings, which were often long, included

discussions of complex issues, including legal matters and related issues. These issues are relevant because, as Dr. Fossett explained in her testimony, the purpose, length, complexity, and context of the meetings can affect the ability of individuals with autism who have hearing impairments, like Ms. Hernandez, to understand and process the information being discussed.

The United States Department of Justice (DOJ) guidance on effective communications under the ADA also states that "[t]he key to deciding what aid or service is needed to communicate *effectively* is to consider the nature, length, complexity, and context of the communication as well as the person's normal method(s) of communication." *ADA Requirements: Effective Communication*, ADA.Gov (Feb. 28, 2020), https://www.ada.gov/resources/effective-communication. The DOJ's guidance must be afforded "great deference," as DOJ is the entity responsible for promulgating and interpreting regulations for Title II of the ADA. *See Bartlett v. N.Y. State Bd. of Law Examiners*, 226 F.3d 69, 79 (2d Cir. 2000); *Davis v. Shah*, 821 F. 3d 231, 262–63 (2d Cir. 2016).

At trial, when presenting these video clips, Defendants presented no evidence that addressed or analyzed these key issues such as the purpose, length, complexity, and context of the meetings. Thus, a few short snippets of video of only the public portion of Board meetings cannot possibly controvert Ms. Hernandez's testimony that she did not receive the supports she needed to receive effective communications to participate in the Board's special meetings, the executive session portions of the regular Board meetings, or even all of the Board's regular meetings.

Finally, the video clips admitted into evidence and presented during the rebuttal testimony of Ms. Hernandez showed the opposite of what Defendants assert. The clip of the November 14, 2017, meeting showed Mr. Kruzel, a member of Board leadership, standing right

in front of Ms. Hernandez with his back to her, talking to the rest of the Board and others in the room. The second video clip, dated June 11, 2019, shows, as Ms. Hernandez testified, her asking Mr. Drezek, the Enfield School Superintendent and member of the Board leadership, to look up when he is talking so that she can see his face to help her understand what he is saying even though he, by his own testimony, was aware of Ms. Hernandez's disabilities and needs for auxiliary aids and supports. These videos provide clear examples of when Ms. Hernandez was not accommodated during Board meetings.

5. <u>Ms. Hernandez presented sufficient evidence for a jury to reasonably conclude that she suffered from physical harm as a result of being denied auxiliary aids, supports, and reasonable modifications.</u>

Defendants also incorrectly assert that Ms. Hernandez has not presented sufficient evidence for the jury to reasonably conclude she suffered from physical pain or exhaustion resulting from the denial of accommodations, and that her pain is a result of emotional stress. Defs.' Mot, ECF No. 157, at 3. This is not the case.

First, Ms. Hernandez testified very specifically about the physical pain she suffered resulting from not being provided the supports she needed to have effective communications. For example, she testified about pain in her neck and shoulders and migraine headaches, as well as the exhaustion that she experienced in trying to understand what was being communicated in the meetings during which she was not accommodated.

Ms. Hernandez's expert, Dr. Fossett, also testified that without the needed supports, it would be a tremendous amount of work and cognitive effort for a person like Ms. Hernandez to keep up with conversation, which would likely be exhausting. She also testified about the physiological impact on people who are deaf and have autism when they do not receive effective

communications, opining that such situations can result in the individual experiencing sore eyes, headaches, exhaustion, and pain.

Finally, on December 19, 2023, the Court ruled that testimony with respect to emotional distress would be excluded from the trial. Accordingly, Ms. Hernandez offered no evidence of emotional stress, but rather presented only evidence of physical pain and suffering with respect to the issues of damages in this case. The Court admitted her testimony, and Defendants did not object to or controvert this testimony. Thus, Ms. Hernandez met her burden of demonstrating that she suffered physical pain as a result of not receiving the supports she needed to have effective communications and accommodations to have an equal opportunity to participate in all Board meetings and related activities related to her work as a Board member.

6. <u>Defendants have not met their burden of proof to sustain an affirmative defense of undue hardship.</u>

Defendants' assertion that they established their burden of proving their "undue hardship" defense is also unavailing. *See* Defs.' Mot., ECF No. 157, at 3. An "undue hardship" defense under the ADA and Section 504 is an affirmative defense for which the defendant has the burden. *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 190 (2d Cir. 2015). To meet this burden, the defendant must show that the plaintiff's request for an accommodation is "an action requiring significant difficulties or expense when considered in light of a number of factors, including the nature and cost of the accommodation, the impact of that accommodation upon the facilities involved, the overall resources of the covered entity, and the type of operation of the covered entity." *Hernandez v. Enfield Bd. of Educ.*, No. 3:19-CV-1907 (OAW), 2022 WL 4104037, at *7 (D. Conn. September 8, 2022) (citing 42 U.S.C. § 12111(10)); *see also* 34 C.F.R. § 104.12(b); 45 C.F.R. § 84.12(b).

Defendants also incorrectly argue that Ms. Hernandez's testimony established their undue hardship defense because they claim that she concedes that her requested accommodations for executive session, including the request for written information, would not have been feasible due to the risk of releasing confidential, privileged materials. Defs.' Mot., ECF No. 157, at 3. Ms. Hernandez, however, made no such concession in her testimony. Rather, in an email, she stated that she understood that in some instances she would not be able to receive written information about what was being discussed in the executive sessions. That does not mean, and could not reasonably be construed by the jury to mean, that providing Ms. Hernandez with her requested accommodations for executive sessions—including a white board—was an undue hardship and thus excused Defendants from proving her with such accommodations.

Furthermore, the trial testimony of Defendants' attorney, Christine Chinni, undercuts Defendants' claim of an undue burden. Attorney Chinni testified that she sent a letter containing confidential and privileged information to Ms. Hernandez that was discussed in an executive session during a meeting from which Ms. Hernandez left early. This fact, which is in evidence, demonstrates that it would not have been an undue hardship for Defendants to provide written materials during executive session. It also does not support a finding that Defendants have satisfied their burden to sustain an affirmative undue hardship defense under either the ADA or Section 504.

## **CONCLUSION**

For the foregoing reasons, Defendants have failed to meet their burden under Fed. R. Civ. P. 50 for a judgment as a matter of law and, therefore, the Court should deny Defendants' Motion.

Dated: January 11, 2024.

        Respectfully submitted,

        /s/ Kasey Considine
        Deborah A. Dorfman (*pro hac vice*)
        Kasey Considine (Fed. Bar No. CT 30756)
        Disability Rights Connecticut
        75 Charter Oak Ave., Ste. 1-101
        Hartford, CT 06106
        Phone: (860) 297-4300
        Fax: (860) 296-0055
        Deborah.Dorfman@disrightsct.org
        Kasey.Considine@disrightsct.org

        Eve L. Hill (Fed. Bar No. MD 19938), *pro hac vice*
        Anthony May (Fed. Bar No. MD 20301), *pro hac vice*
        Brown, Goldstein & Levy, LLP
        120 East Baltimore Street, Suite 2500
        Baltimore, MD 21202
        Phone: (410) 962-1030
        Fax: (410) 385-0869
        ehill@browngold.com
        amay@browngold.com

        *Counsel for Plaintiff Sarah Hernandez*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January 2024, the foregoing Opposition to Defendants' Fed. R. Civ. P. 50 For Judgment as a Matter of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Kasey Considine