## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SARAH HERNANDEZ,
     Plaintiff,

     v.

ENFIELD BOARD OF EDUCATION and
THE TOWN OF ENFIELD,
     Defendants.

No. 3:19-cv-1907 (SRU)

### MEMORANDUM OF DECISION AND PERMANENT INJUNCTION ORDER

Sarah Hernandez brought this action alleging that the Enfield Board of Education (the "Board") and the Town of Enfield (the "Town") (collectively "defendants") violated Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504") by failing to provide her effective communication as an elected member of the Board. After a trial in January 2024, a jury found the defendants liable for violating both the ADA and Section 504 and awarded nominal damages to Hernandez. *See* Verdict Form, Doc. No. 164.

Before the Court now is Hernandez's motion for declaratory and injunctive relief, doc. no. 176.

### I.      Factual and Procedural Background

In November 2017, Hernandez, who is Autistic and hearing impaired, was elected to the Enfield Board of Education. Hernandez served a two-year term as a member of the Board, during which time she made multiple requests for accommodations for her disabilities, such as the permission to pass notes during Board meetings and that other members be required to face her when they spoke, in order to allow her to communicate effectively with other members of the Board. After the defendants failed to honor those requests, Hernandez filed the instant lawsuit in

December 2019, asserting that the defendants violated Title II of the ADA and Section 504 by failing to provide her with the auxiliary aids and services necessary to ensure her effective communication with other members of the Board, and seeking injunctive, declaratory, and monetary relief. *See* Compl., Doc. No. 1. The defendants denied Hernandez's allegations, and also asserted a defense that her requested accommodations would have imposed an undue burden on them. *See* Trial Memo, Doc. No. 142, at 6.

This case was initially assigned to U.S. District Judge Michael P. Shea. After denying the defendants' motion to dismiss, Judge Shea set case management deadlines. *See* Docs. No. 53, 59. In December 2021, the case was transferred to U.S. District Judge Omar A. Williams. *See* Doc. No. 90. On September 8, 2022, Judge Williams granted in part and denied in part the defendants' motion for summary judgment. *See* Doc. No. 92. Specifically, Judge Williams granted summary judgment on both of the two counts asserted by Hernandez's complaint insofar as they were asserted against Defendant Walter Kruzel, chairman of the Board of Education. However, Judge Williams denied summary judgment on both claims against the Board and the Town.

The case was then referred to a magistrate judge for a settlement conference, at the request of the parties. *See* Doc. No. 101. After the case did not settle, Judge Williams set deadlines for the parties to file motions in limine and a joint trial memorandum. *See* Doc. No. 115. On June 20, 2023, the case was transferred to my docket, at which point I held a status conference with the parties and then scheduled the case for trial. *See* Docs. No. 126, 128, 132. The jury trial was conducted from January 8, 2024 to January 11, 2024, when the jury returned a verdict. *See* Doc. No. 164. The jury found that the defendants, with deliberate indifference to a strong likelihood that a violation of Hernandez's rights would result, excluded Hernandez from equal participation in their services, programs, or activities; denied her equal access to the

2

benefits of their services, programs, or activities; and subjected her to discrimination in violation of both Title II of the ADA and Section 504. *Id.* Moreover, the jury concluded that providing Hernandez with effective communication would not have imposed an undue burden on the defendants. *Id.* Finally, the jury concluded that Hernandez had not proven any compensatory damages, and instead awarded her ten dollars of nominal damages. *Id.*

Immediately following the jury's verdict, Hernandez made an oral motion for injunctive and declaratory relief. *See* Doc. No. 161. On January 23, 2024, Hernandez filed her written motion, doc. no. 176, which the defendants opposed on February 13, 2024. *See* Doc. No. 177.

## II.    Standard of Review

"[A]bsent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 70-71 (1992). District courts may award equitable relief in cases brought pursuant to Title II of the ADA and Section 504 because "Congress did not express any intent to limit the remedies available" under those statutes. *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 202 (2d Cir. 2014). The scope of a district court's authority to award equitable relief "is broad, for breadth and flexibility are inherent in equitable remedies." *Id.* at 198 (quoting *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)). Indeed, in civil rights cases against public entities, a "district court has 'not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1236 (2d Cir. 1987) (quoting *Louisiana v. United States,* 380 U.S. 145, 154 (1965)). Nonetheless, a court's power to award equitable relief, while

3

flexible, is not unlimited, and "the court should tailor the remedy to fit the nature and extent of the violation." *Id.* at 1235.

## III.    Discussion

Hernandez moves for both declaratory and injunctive relief. For the reasons set forth below, I conclude that Hernandez has demonstrated that, on the basis of the jury's verdict and the evidence presented at trial, she is entitled to both forms of equitable relief.

### a.   Plaintiff's Request for a Declaratory Judgment

The Declaratory Judgment Act states that,

> [i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). By its terms, that statute requires "(1) an actual controversy within the Court's jurisdiction; (2) a pleading requesting a declaratory judgment; and (3) an interested party seeking a declaration." *Lindsey v. Butler*, 647 F. Supp. 3d 128, 143 (S.D.N.Y. 2022). The defendants do not appear to dispute that the second and third requirements are met in this case. *See* Compl., Doc. No. 1, at ¶ 61 (pleading a demand for a "declaration that Defendants have violated and continue to violate Title II of the ADA and Section 504"). Instead, the defendants argue that this Court should deny Hernandez's request for declaratory relief because it is unnecessary, duplicative of other relief that is sought, and will not operate prospectively. *See* Opp'n., Doc. No. 177, at 21-22. Though not explicitly stated, the argument that the defendants make seems to be, in essence, that no "actual controversy" remains after the jury's verdict.

The Declaratory Judgment Act's requirement of an "actual controversy" is coextensive with the "case or controversy" requirement for Article III standing. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937).  It is true that, as required for

constitutional standing, "a plaintiff who seeks injunctive or declaratory relief 'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future.'" *Rolle v. Girardi*, 689 F. App'x 64, 65 (2d Cir. 2017) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998)). However, Hernandez did testify at trial that, if ensured that she will have access to proper accommodations, she may run for a position on the Board again. *See* Reply, Doc. No. 178, at 2 (citing Trial Tr. Vol I, Doc. No. 170, at 206:3-5). If she does run successfully, Hernandez will again be vulnerable to discrimination at the hands of the defendants. And, "[c]ourts are free to assume that past misconduct is 'highly suggestive of the likelihood of future violations.'" *United States v. Carson*, 52 F.3d 1173, 1184 (2d Cir. 1995) (quoting *SEC v. Management Dynamics, Inc*., 515 F.2d 801, 807 (2d Cir.1975)). Therefore, Hernandez has demonstrated the existence of an "actual controversy." A declaratory judgment will provide necessary clarity that the defendants may not, in the future, subject Hernandez to discrimination of the same nature.

The jury's verdict, in combination with the evidence presented at trial, provide ample support for a declaratory judgment that the defendants' conduct towards Hernandez violated Title II of the ADA and Section 504. *See* Verdict Form, Doc. No. 164, at 1-2. Hernandez's motion for declaratory relief is therefore **granted**.

### b.  Plaintiff's Request for a Permanent Injunction

As stated previously, it is within the equitable power of the district court to award permanent injunctive relief to prevailing plaintiffs in cases involving violations of Title II of the ADA and Section 504. In this case, there is no dispute that the jury found the defendants liable for violation of those statutes; I may therefore award injunctive relief, if appropriate.

Where, as here, a plaintiff has succeeded on the merits, a court may enter a permanent injunction if the plaintiff has demonstrated:

> (1) that [she] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Even if a plaintiff has demonstrated entitlement to a permanent injunction, that injunction must be "narrowly tailored to fit specific legal violations." *Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir. 1994). *See also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 145 (2d Cir. 2011) ("An injunction is overbroad when it seeks to restrain the defendants from engaging in legal conduct, or from engaging in illegal conduct that was not fairly the subject of litigation.").

### i.  Four-Factor Test for a Permanent Injunction

Hernandez is entitled to injunctive relief because she has demonstrated that each of the four requirements for a permanent injunction has been satisfied.

The first requirement for a permanent injunction—irreparable injury—is an "injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc*., 596 F.2d 70, 72 (2d Cir. 1979). Additionally, irreparable harm may be found where damages are "clearly difficult to assess and measure." *Danielson v. Loc. 275, Laborers Int'l Union of N. Am., AFL-CIO*, 479 F.2d 1033, 1037 (2d Cir. 1973). In cases where a plaintiff's civil rights have been violated, courts within the Second Circuit often apply a rebuttable presumption that irreparable injury exits because of the difficulty of quantifying the harm done to the plaintiff. *See, e.g., Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n of Town of Fairfield*, 790 F. Supp. 1197, 1208 (D. Conn. 1992) ("The court finds irreparable harm may be presumed in this case because . . . the plaintiff has presented sufficient evidence to establish that

6

its rights under the [Fair Housing] Act have been violated."); *Gibson v. U.S. I.N.S.*, 541 F. Supp. 131, 136 (S.D.N.Y. 1982) ("[W]here the statutory civil rights of employees [under Title VII] are found to have been violated, irreparable injury may be presumed from the loss of human dignity which such violations engender."). Hernandez contends that those cases are persuasive, despite arising under different civil rights statutes, because courts interpret the ADA, FHA, and Title VII similarly. *See* Reply, Doc. No. 18, at 4. Even without presuming that irreparable injury exists on the basis of the defendants' violation of the ADA and Section 504, though, I am persuaded that Hernandez has been irreparably harmed, because, as a result of the defendants' discrimination, Hernandez has effectively been denied the opportunity to serve as a public official, a harm that is undeniably difficult to quantify. *See id.* at 5 (citing deposition testimony that Hernandez "want[s] to reengage, but [] cannot until an accommodations process is there.").

The second factor that I must consider—whether other adequate remedies are available at law—obviously overlaps with the analysis of irreparable injury. It is worth noting that recent Supreme Court caselaw has made it difficult, in many situations, for a plaintiff alleging a violation of Section 504 and Title II of the ADA to demonstrate entitlement to compensatory damages. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) (holding that emotional distress damages are not available under Section 504). As a result, Hernandez was limited to attempting to convince the jury that she suffered *physical* pain and suffering, or other consequential damages, as a result of the defendants' failure to provide her effective communication or auxiliary aids and services, which she failed to do. *See* Verdict Form, Doc. No. 164, at ¶ 5. The jury awarded Hernandez nominal damages, *see id.* at ¶ 6, which Hernandez argues are insufficient to remedy the harm she suffered and to prevent its recurrence. *See* Reply, Doc. No. 178, at 9-10. I agree. Contrary to the defendants' contention, no evidence was

presented at trial that the defendants have adopted a policy or procedure for elected Board members or other elected officials to obtain disability accommodations. *Cf.* Opp'n., Doc. No. 15, at 14 (citing to testimony about an ADA policy that applies to students and school employees). *See also* Trial Tr. Vol. II, Doc. No. 171, at 54:14-18 (testimony of Board Chair Walter Kruzel that he is "not aware" of any policy specifically relating to "a process for providing reasonable accommodations to board members with disabilities."). Therefore, should Hernandez be elected to the Board or another municipal office in the future, there is nothing preventing the defendants from discriminating against her again. The limited damages that were available to her were thus an inadequate remedy, and injunctive relief is warranted.

The balance of the hardships and the public interest also favor granting an injunction. The defendants make no argument that the injunctive relief requested by Hernandez would pose any hardship to them or harm the public interest. Instead, they simply argue that "the particular equities in this case tip in favor of the Board" because injunctive relief is unnecessary. *See* Opp'n., Doc. No. 177, at 20 (pointing to the existence of Town ADA policies and a Town ADA coordinator, efforts of the Board to accommodate Hernandez, and the fact that Hernandez does not currently hold any local office). But, as explained previously, the jury's verdict clearly demonstrates that the defendants' conduct, as well as their existing policies and procedures, were insufficient to prevent them from discriminating against Hernandez. And, as evidenced by the defendants' failure to even attempt to argue otherwise, the injunctive relief sought by Hernandez will pose no meaningful hardship to the defendants because it will merely require that they take steps to fulfill their existing legal obligations. In turn, it will prevent Hernandez and other members of the public from being effectively excluded from holding local elected office on account of their disabilities.

### ii.  Scope of the Injunction

Finally, even having established that a permanent injunction is warranted, I must ensure

that the injunctive relief that is granted is "narrowly tailored to fit specific legal violations."

*Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir. 1994). In her motion, Hernandez

requests an order:

1) Enjoining Defendants from violating Title II and Section 504 in the future;
2) Requiring Defendants to promulgate a policy and procedure for qualified individuals with disabilities, including candidates and elected officials, to request and obtain auxiliary aids and services and reasonable modifications;
3) Requiring Defendants to promulgate a process for qualified individuals with disabilities, including candidates and elected officials seeking auxiliary aids and services and reasonable modifications, to submit a complaint to a neutral third party if their requests are denied; and
4) If Defendants determine that such a request poses an undue burden or would fundamentally alter their programs or services, [requiring them] to provide a written statement to the individual with a disability describing the reasons for reaching that conclusion.

Mot. for Relief, Doc. No. 176, at 4. The jury found that the defendants discriminated against

Hernandez in violation of Title II of the ADA and Section 504. *See* Verdict Form, Doc. No. 164.

Both statutes impose on the defendants an obligation to furnish appropriate auxiliary aids and

services where necessary to afford individuals with disabilities equal access to their services,

programs, or activities. *See* 28 C.F.R. § 35.160(b)(1); 1 C.F.R. § 457.160. Additionally, the

defendants must make reasonable modifications to their policies, practices, or procedures when

the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R.

§ 35.130(b)(7)(i). Finally, the defendants are not required to provide any auxiliary aids or

services or make any reasonable modification that would pose an undue burden or fundamentally

alter the nature of their programs or services, but "[t]he decision that compliance would result in

such alteration or burdens . . . must be accompanied by a written statement of the reasons for

reaching that conclusion." *Id.* § 35.164. The injunctive relief requested by Hernandez is narrowly

tailored to the defendants' specific legal violations, because each element of the relief requested precisely tracks and will ensure compliance with those requirements of the ADA and Section 504.

The defendants, however, argue that the scope of the requested injunction is overbroad insofar as it applies to campaign activities and caucus meetings, which the defendants contend exceeds the scope of the issues at trial and the defendants' control. Opp'n., Doc. No. 177, at 11-14. Based on the testimony presented at trial, the defendants are correct that the Board does not manage or control campaign activities or caucus meetings, which are instead controlled by the Enfield Democratic and Republican Town Committees. *See* Trial Tr. Vol I, Doc. No. 170, at 66-67:24-7; *Id.* at 85-86:23-3; Trial Tr. Vol II, Doc. No. 171, at 278:3-8. And the Enfield Democratic Town Committee is not, and has never been, a defendant in this case. The defendants also are correct that Hernandez's testimony established that she *was* provided with effective accommodations and communication by the Enfield Democratic Town Committee during the course of her candidacy for election to the Board, describing the campaign process as "joyful." *Id.* at 66:24-71:16. Therefore, not only does it appear that campaign activities are not under the control of the defendants, but also that discrimination prior to election was "not fairly the subject of litigation." *Mickalis Pawn Shop*, 645 F.3d at 145. For those reasons, I conclude that an injunction requiring that the Town and Board to provide auxiliary aids and services and reasonable modifications to candidates for office would be overbroad. I thus will limit the injunctive relief that is ordered to only apply to officials once elected.

Finally, although Hernandez did testify that she was not provided with effective communication at caucus meetings, which are party-specific meetings of Board members, she also acknowledged that those meetings were not under the direct control of the Board generally,

10

but only of the Democratic Caucus. *Id.* at 90:6-13. However, the activities of the Board, the Town, and the Town's political committees are intertwined, especially with respect to governing the conduct of the Board during both public meetings and caucus meetings. *See, e.g., id.* at 78:21-79:12 (testimony from Hernandez that, after making a request for accommodations at Board meetings, she was told "we will discuss this in December during our first formal caucus"); *id.* at 90:8-13 (testimony from Hernandez that as a member of the Democratic Caucus, she was instructed that all of her requests related to Board conduct should be made to Tim Neville, the Board minority leader and head of the Democratic Caucus). And, the regulations implemented pursuant to Title II of the ADA are broad in scope, prohibiting public entities from discriminating against individuals with disabilities both directly and indirectly, and from perpetuating discrimination by other organizations or entities. See 28 C.F.R. § 35.130(b)(1) (prohibiting discrimination "directly or through contractual, licensing, or other arrangements. . . ."). Consistent with the ADA's "clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), an injunction requiring the defendants to take steps to ensure that individuals with disabilities have an equal opportunity to participate in local office once elected—including in caucus meetings, which are integral aspects of service on a local Board—is narrowly tailored to remedying the defendants' violation of civil rights law. I also see no practical impediment to the Town and/or the Board providing elected officials with auxiliary aids and services during caucus meetings if those aids and services are already provided to the official during public meetings.

**IV.    Conclusion**

For the reasons stated above, I **grant** Hernandez's motion for declaratory and injunctive relief, doc. no. 176. The clerk shall enter judgment.

## <u>PERMANENT INJUNCTION ORDER</u>

For the reasons set forth above, **IT IS HEREBY ORDERED**, pursuant to Rule 65(d) of the Federal Rules of Civil Procedure, that:

(a) The Town of Enfield (the "Town") and the Enfield Board of Education (the "Board") are permanently restrained and enjoined from violating Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

(b) The Town and the Board shall promulgate a policy and procedure for qualified individuals with disabilities, including elected officials, to request and obtain auxiliary aids and services and reasonable modifications;

(c) The Town and the Board shall promulgate a process for qualified individuals with disabilities, including elected officials, seeking auxiliary aids and services and reasonable modifications, to submit a complaint to a neutral third party if their requests are denied; and

(d) If the Town and the Board determine that such a request poses an undue burden or would fundamentally alter their programs or services, they shall provide a written statement to the individual with a disability describing the reasons for reaching that conclusion.

So ordered.

Dated at Bridgeport, Connecticut, this 14th day of June 2024.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge