**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

SARAH HERNANDEZ,

    Plaintiff,

v.

ENFIELD BOARD OF EDUCATION,
and THE TOWN OF ENFIELD,

    Defendants.

Civil Action No.: 3:19-CV-01907-SRU

July 1, 2024

**PLAINTIFF SARAH HERNANDEZ'S MEMORANDUM
<u>IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... iii

INDEX OF EXHIBITS .............................................................................................................. vi

INTRODUCTION ....................................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 3

I.      Pre-Rule 68 Offer of Compromise............................................................................ 3

        A.      Settlement Attempts, Complaint, Motion to Dismiss, and Motion to Disqualify... 3

        B.      Discovery .......................................................................................................... 5

                1.      Written Discovery ................................................................................ 5

                2.      Depositions .......................................................................................... 7

                3.      Expert Discovery ............................................................................... 10

        C.      Summary Judgment and Mediation ................................................................ 11

        D.      Defendants' Declaratory Judgment Action..................................................... 14

        E.      *Cummings v. Premier Rehab Keller* ............................................................ 14

II.     Post-Rule 68 Offer of Compromise ......................................................................... 15

        A.      Defendants' Offer of Compromise ................................................................. 15

        B.      Trial Preparation ............................................................................................ 15

        C.      Trial.................................................................................................................. 18

        D.      Post-Trial Briefing ......................................................................................... 20

LEGAL STANDARD................................................................................................................ 21

ARGUMENT.............................................................................................................................. 22

I.      Ms. Hernandez is entitled to reasonable fees and expenses............................... 22

        A.      Ms. Hernandez is the prevailing party. .......................................................... 22

        B.      Ms. Hernandez's counsels' hourly rates are reasonable. ............................... 23

                1.      Out-of-district rates are appropriate for BGL attorneys. ................... 23

2.    The rates charged by BGL and DRCT are reasonable...............................25

C.    The number of hours Ms. Hernandez's counsel expended is reasonable. ............27

1.    Ms. Hernandez's counsel achieved substantial success, and the injunction the Court issued serves the public interest................................................27

2.    Ms. Hernandez's counsel should be compensated for the time reasonably expended on her claim for emotional distress damages............................29

3.    Defendants needlessly complicated and prolonged this litigation............30

D.    Ms. Hernandez may recover fees and costs incurred after Defendants' Rule 68 Offer of Judgment. ................................................................................................31

E.    Because Ms. Hernandez's counsel has already exercised billing judgment, the Court should not further reduce the lodestar amount...........................................32

II.    Ms. Hernandez is entitled to reimbursement of her litigation expenses, including expert fees. ....................................................................................................................................33

CONCLUSION...........................................................................................................................34

CERTIFICATE OF SERVICE ...................................................................................................36

## TABLE OF AUTHORITIES

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*,
522 F.3d 182 (2d Cir. 2008) ...................................................................................... *passim*

*Blanchard v. Bergeron*,
489 U.S. 87 (1989)...................................................................................................... 21

*Blum v. Stenson*,
465 U.S. 886 (1984).................................................................................................... 26

*Bone v. Univ. of N.C. Health Care Sys.*,
No. 1:18CV994, 2024 WL 1014164 (M.D.N.C. Mar. 8, 2024) .............................. 26

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
532 U.S. 598 (2001).................................................................................................... 22

*Carroll v. Blinken*,
105 F.3d 79 (2d Cir. 1997) ......................................................................................... 28

*Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*,
934 F.3d 238 (2d Cir. 2019) ....................................................................................... 28

*City of Riverside v. Rivera*,
477 U.S. 561 (1986)............................................................................................ 2, 21, 31

*Cummings v. Premier Rehab Keller*,
596 U.S. 212 (2022)........................................................................................ 14, 15, 16, 29

*Elder v. Nat'l Conf. of Bar Examiners*,
No. C 11-00199 SI, 2011 WL 4079623 (N.D. Cal. Sept. 12, 2011)......................... 26

*Farbotko v. Clinton Cnty.*,
433 F.3d 204 (2d Cir. 2005) ....................................................................................... 23

*Farrar v. Hobby*,
506 U.S. 103 (1992).................................................................................................... 22

*Garcia v. Yonkers Sch. Dist.*,
561 F.3d 97 (2d Cir. 2009) ......................................................................................... 22

*Grant v. Martinez*,
973 F.3d 96 (2d Cir. 1992) ......................................................................................... 27

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)..................................................................................................... 2, 21, 27

*Hernandez v. Berlin Newington Assocs., LLC*,
    No. 3:10-cv-01333 (VLB), 2016 WL 5339720 (D. Conn. Sept. 22, 2016).............................. 34

*Hines v. City of Albany*,
    613 F. App'x 52 (2d Cir. 2015) ............................................................................................ 22

*Holick v. Cellular Sales of N.Y., LLC*,
    48 F.4th 101 (2d Cir. 2022) .................................................................................................. 29

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ......................................................................................*passim*

*Kerr v. Quinn*,
    692 F.2d 875 (2d Cir. 1982) ................................................................................................ 21

*Kirsch v. Fleet St., Ltd.*,
    148 F.3d 149 (2d Cir. 1998) ................................................................................................ 27

*Kuzma v. I.R.S.*,
    821 F.2d 930 (2d Cir. 1987) ................................................................................................ 34

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) ................................................................................. 22, 26, 28, 33

*Lilly v. City of New York*,
    934 F.3d 222 (2d Cir. 2019) ................................................................................................ 21

*Nat'l Fed'n of the Blind v. Target Corp.*,
    No. C 06-01802 MHP, 2009 WL 2390261 (N.D. Cal. Aug. 3, 2009)................................... 26

*Parris v. Pappas*,
    844 F. Supp. 2d 262 (D. Conn. 2012)................................................................................... 26

*Pawtucket Credit Union v. M/Y Sea Rayna*,
    560 F. Supp. 3d 690 (D. Conn. 2021)................................................................................... 23

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)............................................................................................................. 21

*Perez v. Westchester Cnty. Dep't of Corr.*,
    587 F.3d 143 (2d Cir. 2009) ................................................................................................ 22

*Quaratino v. Tiffany & Co.*,
    166 F.3d 422 (2d Cir. 1999) ................................................................................................ 29

*Rand-Whitney Containerboard v. Town of Montville*,
 No. 3:96CV413 (HBF), 2006 WL 2839236 (D. Conn. Sept. 5, 2006) ..................................... 34

*Restivo v. Hessemann*,
 846 F.3d 547 (2d Cir. 2017) .......................................................................................... 23, 24

*Scott v. City of New York*,
 626 F.3d 130 (2d Cir. 2010) ................................................................................................. 27

*Simmons v. N.Y.C. Transit Auth.*,
 575 F.3d 170 (2d Cir. 2009) ................................................................................................. 24

*Town of Enfield v. Travelers Indem. Co.*,
 No. HHD-CV21-6144598-S (Conn. Super. Ct.) ............................................................. 12, 14

*Townsend v. Benjamin Enters., Inc.*,
 679 F.3d 41 (2d Cir. 2012) ................................................................................................... 32

**Statutes**

29 U.S.C. § 794a ...................................................................................................................... 21

42 U.S.C. § 12205 .................................................................................................................... 21

42 U.S.C. § 2000 ...................................................................................................................... 34

**Rules**

28 C.F.R. § 35.164 .................................................................................................................... 12

Fed. R. Civ. P. 32 ..................................................................................................................... 17

Fed. R.Civ. P. 68 ................................................................................................................. 15, 31

**Other Authorities**

Claire Fahy, *An Autistic School Board Member Sued for Discrimination. She Won $10.*, N.Y.
 Times (Feb. 1, 2024), https://www.nytimes.com/2024/02/01/nyregion/autism-discrimination-
 lawsuit.html?searchResultPosition=1 ................................................................................. 24

## INDEX OF EXHIBITS

Exhibit 1.................................................Declaration of Anthony J. May

    Exhibit 1-A ................................BGL billing records

    Exhibit 1-B .................................BGL fees cut from billing records

    Exhibit 1-C .................................BGL timekeepers

    Exhibit 1-D ................................BGL litigation costs and expenses

    Exhibit 1-E .................................Invoices of expert Dr. Brenda Fossett

    Exhibit 1-F.................................Invoices of expert Dr. Kathleen Collins

Exhibit 2.................................................Declaration of Kasey Considine

    Exhibit 2-A ................................DRCT billing records

    Exhibit 2-B .................................DRCT fees cut from billing records

Exhibit 3.................................................September 16, 2019 Letter

Exhibit 4.................................................January 21, 2020 Letter

Exhibit 5.................................................February 21, 2020 Email

Exhibit 6.................................................Trial Transcript, Volume III Excerpt

Exhibit 7.................................................Town's Interrogatory Objections & Responses Excerpt

Exhibit 8.................................................Town's Requests for Production of Documents Objections & Responses Excerpt

Exhibit 9.................................................Plaintiff's First Request for Production of Documents to the Enfield Board of Education Excerpt

Exhibit 10 ..............................................Town's Interrogatories & Requests for Production of Documents Excerpt

Exhibit 11 ..............................................June 2, 2021 Letter

Exhibit 12 ..............................................June 8, 2021 Letter

Exhibit 13 ..............................................December 18, 2020 Letter

Exhibit 14 ..............................................July 1, 2020 Letter

Exhibit 15 ..............................................September 22, 2020 Letter

Exhibit 16 ..............................................September 23, 2020 Email

Exhibit 17 ..............................................Ryder Deposition Transcript Excerpt

Exhibit 18 ..............................................LeBlanc Deposition Transcript Excerpt

Exhibit 19 ..............................................Kruzel Deposition Transcript Excerpt

Exhibit 20 ..............................................Drezek Deposition Transcript Excerpt

Exhibit 21 ..............................................Ross Deposition Transcript Excerpt

Exhibit 22 ..............................................January 31, 2023 Letter

Exhibit 23 ..............................................February 7, 2023 Email

Exhibit 24 ..............................................March 30, 2023 Letter

Exhibit 25 ..............................................May 17, 2023 Email

Exhibit 26 ..............................................Declaration of Michael W. Bien

       Exhibit 26-A.............................Resume of Michael W. Bien

Exhibit 27 ..............................................November 22, 2023 Email

Exhibit 28 ..............................................Declaration of Steven M. Klepper

       Exhibit 28-A.............................Curriculum vitae of Steven M. Klepper

Exhibit 29 ..............................................Declaration of Mitchell Y. Mirviss

Exhibit 30 ..............................................Declaration of Steven J. Schwartz

Exhibit 31 ..............................................Declaration of Maia Goodell

Exhibit 32 ..............................................Declaration of Elana Bildner

**INTRODUCTION**

After over four years of litigation, a jury found in Plaintiff Sarah Hernandez's favor on her disability discrimination claims against Defendants, the Enfield Board of Education (the "Board") and the Town of Enfield (the "Town"). ECF No. 164, Jury Verdict. The jury concluded that Defendants' discrimination resulted from deliberate indifference to a strong likelihood that a violation of Ms. Hernandez's rights would result and awarded nominal damages. *Id.* This Court subsequently granted Ms. Hernandez's request for declaratory and injunctive relief. ECF No. 181. The verdict and the award of declaratory and injunctive relief send a powerful message that local government entities must abide by disability rights laws and ensure individuals with disabilities have an equal opportunity to participate in local civic affairs. As the prevailing party, Ms. Hernandez is entitled to reasonable attorneys' fees and costs.

Ms. Hernandez's victory occurred only after four years of unnecessarily prolonged litigation. Rather than work collaboratively to resolve the issues and save Enfield taxpayers' dollars, Defendants engaged in scorched-earth tactics, refusing to compromise at every step and requiring Plaintiff to incur significant attorneys' fees to obtain her favorable verdict and declaratory and injunctive relief. The record consists of over 20,000 documents, fourteen depositions, substantial expert discovery, and extensive motions practice. This case also involved significant trial preparation after Defendants rejected at least five settlement offers between September 2019 and May 2023 and refused to consent to a bench trial.

Further, Defendants' tactics—including mischaracterizations of the record, refusals to stipulate to previously conceded facts, and an untimely *motion in limine* a week before trial on a topic Defendants had waived—repeatedly and unnecessarily drove up Ms. Hernandez's fees. Because Ms. Hernandez's fees were unavoidable due to Defendants' actions, Defendants bear

the responsibility for compensating her counsel for them. *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." (citation omitted)).

Ms. Hernandez now seeks reasonable fees for her counsel from Disability Rights Connecticut ("DRCT") and Brown, Goldstein & Levy ("BGL"). The vast majority of Ms. Hernandez's fees were incurred by two junior attorneys, Anthony May and Kasey Considine, both of whom had never tried a federal jury trial until this matter. Ex. 1, May Decl. ¶ 50; Ex. 2, Considine Decl. ¶ 9. In total, Ms. Hernandez seeks $1,274,1775 in attorneys' fees and $59,658.38 in expenses. The following table disaggregates the fees and expenses sought:

|  | Fees | Expenses |
|---|---|---|
| DRCT | $383,865.00 | - |
| BGL | $890,312.50 | $59,658.38 |
| Total | $1,274,177.5 | $59,658.38[1] |

The reasonable attorneys' fees Ms. Hernandez seeks are based on a lodestar calculation that reflects substantial reductions in the hours actually spent on this matter. Ms. Hernandez made "a good faith effort to exclude from [her] fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); Ex. 1, May Decl. ¶ 23; Ex. 2, Considine Decl. ¶¶ 40–44. Additionally, Ms. Hernandez's counsel has been consistently mindful of keeping fees and expenses down, using junior attorneys wherever possible, attempting to settle several times, and reducing the hourly rate sought where appropriate. Ex. 1, May Decl. ¶¶ 17–19, 23; Ex. 2, Considine Decl. ¶¶ 34–36, 40–44. In total, DRCT has reduced its fees by 171.7 hours, at a value of $70,751.00 (or about 18% of its total fees incurred in this case), while BGL has reduced its fees by 647.6 hours, at a value of

---

[1] Because DRCT incurred a small portion of expenses, Plaintiff's counsel has combined these expenses and costs for simplicity. *See* Ex. 1, May Decl., Ex. 1-D.

$262,497.00 (or 22.8% of its total fees incurred in this case). Ex. 1, May Decl. ¶ 24; Ex. 2, Considine Decl. ¶ 45. Accordingly, the Court should grant Ms. Hernandez's petition for reasonable attorneys' fees.

<div align="center">

**STATEMENT OF FACTS**

</div>

This case arose from Defendants' failure to provide Ms. Hernandez with auxiliary aids and services and reasonable modifications to ensure effective communication, equal access, and equal opportunity to participate during her term as an elected member of the Board, as required by the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Because the Court's consideration of attorneys' fees requires an assessment of fees incurred before and after Defendants' Rule 68 Offer of Compromise, Ms. Hernandez addresses separately below the fees she incurred: 1) Pre-Rule 68 Offer of Compromise; and 2) Post-Rule 68 Offer of Compromise.

**I.    Pre-Rule 68 Offer of Compromise**

**A.    Settlement Attempts, Complaint, Motion to Dismiss, and Motion to Disqualify**

Counsel for Ms. Hernandez attempted to resolve this matter early and often. Ex. 1, May Decl. ¶ 28; Ex. 2, Considine Decl. ¶¶ 34–35, 47. On September 16, 2019, BGL sent Walter Kruzel, the Board's Chairman, and Christine Chinni, the Board's counsel at the time, a letter including an opening, negotiable offer of $35,000 plus a modest payment of attorneys' fees. *See* Ex. 3, Sept. 16, 2019 Letter, at 3; Ex. 2, Considine Decl. ¶¶ 34–35. BGL noted that if the case "proceeded absent an informal resolution," the firm's "fees and costs . . . would increase significantly." Ex. 3, at 3; Ex. 2, Considine Decl. ¶ 35. The letter requested a response by September 30, 2019. Ex. 3, at 4; Ex. 2, Considine Decl. ¶ 35. DRCT attempted to reach Ms. Chinni by phone and by email, but neither she nor Mr. Kruzel responded. *See id.*

<div align="center">3</div>

Ms. Hernandez filed her complaint on December 3, 2019, seeking injunctive relief prohibiting Defendants from violating the ADA and Section 504, a declaration that Defendants violated and continued to violate the ADA and Section 504, compensatory damages, reasonable attorneys' fees and costs, and further relief as the Court deemed just. *See* ECF No. 1, Compl. ¶ 61. After litigation commenced, counsel resent Defendants another demand that also went unanswered. Ex. 1, May Decl. ¶ 29.

On January 16, 2020, the Court issued an Order explaining that Ms. Chinni "failed to file an appearance" and directing her to do so. ECF No. 20. Ms. Chinni did not comply until March 11, 2020, entering her appearance on behalf of the Board and Chairman Kruzel. ECF No. 30.[2] Counsel for Ms. Hernandez met and conferred with Ms. Chinni regarding their belief that Ms. Chinni had a conflict of interest due to her involvement in the events described in the Complaint and her potential to be called as a witness. Ex. 1, May Decl. ¶ 30. Ms. Chinni disagreed, requiring Ms. Hernandez to file a Motion to Disqualify. *Id.*; *see* ECF No. 35, Pl.'s Mot. Disqualify. Defendants did not respond to the Motion to Disqualify for nearly four months. *See* ECF No. 49, Defs.' Opp. Mot. Disqualify.

On January 23, 2020, attorney James Tallberg entered his appearance on behalf of the Town. ECF No. 21. Mr. Tallberg conferred with Ms. Hernandez's counsel and incorrectly asserted that Ms. Hernandez needed to exhaust administrative remedies before bringing her discrimination claims. *See* Ex. 4, Jan. 21, 2020 Letter, at 1. After Ms. Hernandez's counsel pointed out his error, the Town maintained that it played no role in any discrimination Ms. Hernandez endured. *See* Ex. 5, Feb. 21, 2020 Email; Ex. 1, May Decl. ¶ 31.

---

[2] Ms. Chinni's Notice of Appearance was pre-dated for January 15, 2020. ECF No. 30.

4

The Town moved to dismiss Ms. Hernandez's Complaint on February 21, 2020, arguing that the Board and the Town are separate legal entities, and that the Town could not be held liable for the Board's actions. *See* ECF No. 24-1, Defs.' Mot. Dismiss, at 7–12. Ms. Hernandez opposed, citing Connecticut law providing that towns control public schools through local boards of education and providing ample case law establishing the Town's liability for the Board's conduct. ECF No. 32, Pl.'s Opp. Mot. Dismiss, at 5–10.

After a consolidated hearing and oral argument on Plaintiff's Motion to Disqualify, the Court granted Ms. Hernandez's request to disqualify Ms. Chinni. ECF No. 52. The transcript of this hearing later served as the basis for Ms. Chinni's impeachment at trial. *See* Ex. 6, Trial Tr., Vol. III, at 500:6–505:25; Ex. 1, May Decl. ¶ 30. On August 19, 2020, the Court denied the Town's Motion to Dismiss, explaining that "[w]hen the Board responded to, and allegedly denied, Ms. Hernandez's requests for reasonable accommodations for her disabilities, it was acting on behalf of the Town of Enfield." ECF No. 53, Order on Mot. Dismiss, at 14. BGL counsel had another telephone conversation with Mr. Tallberg in February 2021 reiterating Plaintiff's openness to settlement, but he declined to discuss it. Ex. 1, May Decl. ¶ 29.

### B.    Discovery

#### 1.    Written Discovery

The case proceeded to discovery. Ms. Hernandez's counsel gathered and analyzed voluminous communications such as emails and text messages, as well as documents like Board meeting minutes, agendas, and policies, to craft a factual narrative. Several of these documents, particularly text messages and emails, were highly relevant in depositions, at summary judgment, and at trial. *See* Ex. List, ECF No. 83-2, Pl.'s Opp. Mot. Summ. J., at 2–3; ECF No. 142, Trial Mem., at 16–18. Ms. Hernandez's interrogatories to Defendants also later supported the Court's

5

denial of Defendants' Motion for Summary Judgment. ECF No. 83, Pl.'s Opp. Mot. Summ. J., at 3, 40; *accord* ECF No. 92, at 2 n.3, 14–16.

During written discovery, Defendants created additional, unnecessary work for Ms. Hernandez's counsel. For example, instead of providing specific documents to answer Ms. Hernandez's interrogatories and requests for production of documents, Defendants provided internet links, requiring Ms. Hernandez's counsel to sift through hundreds of pages of online documents, including Board meeting minutes and agendas, to find the answers they needed. Ex. 1, May Decl. ¶ 32; *see, e.g.*, Ex. 7, Town's Interrog. Objs. & Resps., at 7–9 (containing eleven links to eight unique web pages); Ex. 8, Town's Req. Produc. Docs. Objs. & Resps., at 6–7 (containing eighteen links to nine unique web pages). On the evening before, and in some instances hours before, Ms. Hernandez's counsel was scheduled to depose Timothy Neville, Scott Ryder, Tina LeBlanc, and Superintendent Christopher Drezek, Defendants produced multiple of pages of emails and text messages, forcing Ms. Hernandez's counsel to review the lengthy production late in the evening before or morning of the deposition, even though these materials should have been produced in response to Plaintiff's document requests. *See, e.g.*, Ex. 9, Pl.'s First Req. Produc. Docs. to Board, at 6.

Defendants also sought an expansive set of communications from Ms. Hernandez, such as her conversations on Facebook, emails with third parties, cell phone records, and mental health records. Ex, 1, May Decl. ¶ 33; *see* Ex. 10, Town's Interrogs. & Req. Produc. Docs., at 3, 5–8, 12. Ms. Hernandez's counsel spent hours reviewing, redacting irrelevant information, and ultimately producing a litany of Ms. Hernandez's Facebook messages and emails. Ex. 1, May Decl. ¶ 33. Defendants complained via letter about the redactions, *see id.*; Ex. 11, June 2, 2021 Letter, at 1, and Ms. Hernandez's counsel was forced to prepare a redaction log because

Defendants would not accept that the vast majority of the redactions were to omit entirely irrelevant materials, *see* Ex. 12, June 8, 2021 Letter, at 1. Moreover, Ms. Hernandez's counsel objected to Defendants' request for Ms. Hernandez's cell phone records as overbroad and unduly burdensome. *See* Ex. 13, Dec. 18, 2020 Letter, at 2. Defendants insisted on obtaining the phone records, issuing a subpoena to Ms. Hernandez's cell phone provider before ultimately abandoning the subpoena.

On July 1, 2020, based in part on her written discovery, Ms. Hernandez submitted a damages analysis to Defendants, requesting $150,000 in damages and $77,248 in attorneys' fees. Ex. 14, July 1, 2020 Letter, at 4. Additionally, Ms. Hernandez flagged for Defendants that similar cases involving a failure to provide effective communication yielded six-figure attorneys' fees awards. *Id.* at 2–3. On September 22, 2020, Ms. Hernandez sent Mr. Tallberg a settlement offer, requesting that Defendants implement protocols for receiving requests for and providing reasonable accommodations and modifications to individuals with disabilities participating in local politics in the Town, and requesting $150,000 in damages and attorneys' fees and costs of $109,161.32. Ex. 15, Sept. 22, 2020 Letter, at 3–4. On September 23, 2020, Mr. Tallberg responded via email that while the offer had been shared with his clients, he intended to depose Plaintiff before his "clients would agree to mediate the dispute." Ex. 16, Sept. 23, 2020 Email.

### 2.    Depositions

The Parties took fourteen total depositions as follows:

| Deponent | Party Noting Deposition | Total Time |
|---|---|---|
| Dr. Cheryl Boucakis | Defendants | 2:26 |
| Christine Chinni, Esq. | Plaintiff | 3:05 |
| Dr. Kathleen Collins | Defendants | 3:44 |
| Ashley DePeau | Defendants | 2:16 |
| Christopher Drezek | Plaintiff | 3:43 |
| Dr. Brenda Fossett | Defendants | 3:16 |
| Sarah Hernandez | Defendants | 7:33 |

| Walter Kruzel | Plaintiff | 5:48 |
|---|---|---|
| Tina LeBlanc | Plaintiff | 3:25 |
| Timothy Neville | Plaintiff | 4:42 |
| Theresa Nygren, LCSW | Defendants | 1:53 |
| Dr. Robert Ross | Plaintiff | 3:16 |
| Scott Ryder | Plaintiff | 2:10 |
| Marcy Taliceo | Defendants | 2:01 |

Ms. Hernandez took care to notice depositions only for witnesses who would potentially testify at trial and was as efficient as possible in the time taken to depose each witness. Ex. 1, May Decl. ¶ 35. Of the witnesses Plaintiff deposed, all were ultimately listed by either Plaintiff or Defendants to testify at trial. *See* ECF No. 142, Trial Memo, at 7–12; Ex. 1, May Decl. ¶ 35. For example, Mr. Kruzel's deposition designations were vital to Ms. Hernandez's case-in-chief at trial. *See e.g.*, ECF No. 181 at 8; *see also* Ex. 1, May Decl. ¶ 47. During the deposition process, Defendants repeatedly impeded Ms. Hernandez's counsel's ability to prepare, such as by providing documents on the evening before a scheduled deposition despite their responsiveness to prior document requests.

During depositions, it became clear to Ms. Hernandez's counsel that Defendants had not provided complete answers to Ms. Hernandez's interrogatories and requests for production of documents. For example, Scott Ryder testified that he conducted a search for responsive documents only after he received a notice of deposition in March 2021. *See* Ex. 17, Ryder Dep., at 11:13–16:6. Tina LeBlanc made a similar statement in her deposition after also receiving a notice of deposition in March 2021. *See* Ex. 18, LeBlanc Dep., at 10:14–12:9. This was true despite the fact that Ms. Hernandez's requests for production of documents expressly requested communications between Ms. Hernandez and other Board members, including Mr. Ryder and Ms. LeBlanc. *See, e.g.*, Ex. 9, Pl.'s First Req. Produc. Docs to Board, at 6.

Other deficiencies emerged as well. Walter Kruzel testified that he did not search Ms. Hernandez's Board email account in response to discovery requests. *See* Ex. 19, Kruzel Dep., at 60:5–61:4. Christopher Drezek, the Enfield Public Schools superintendent, testified that his search for responsive documents did not include text messages or emails that included Ms. Hernandez. Ex. 20, Drezek Dep., at 12:25–14:5. Ms. Hernandez's counsel detailed the deficiency in a letter to Defendants' counsel, *see* Ex. 11, June 2, 2021 Letter, requiring her counsel to incur additional time and resources to meet and confer to resolve these issues.

Plaintiff was also forced to explore Defendants' undue burden defense. *See* Ex. 1, May Decl. ¶¶ 36, 52; ECF No. 68, at 9; ECF No. 72-2, at 7. The crux of Defendants' undue burden argument was that certain things, like CART captioning, would be too expensive, or that putting things in writing would be overly burdensome. During Chairman Kruzel's deposition, however, it became clear that the Defendants failed to investigate whether the accommodations they claimed Ms. Hernandez requested (and even she didn't), such as providing written materials for executive sessions of the Board, posed such a hardship. *See e.g.,* ECF No. 83-11, Kruzel Dep., at 244:18–245:19; 250:12–252:13 (testifying that providing written materials would be too time-intensive but that he never inquired as to how much time it would take). Further, Defendants claimed that providing captioning technology would pose an undue burden even though Ms. Hernandez never requested such an accommodation. *See id.* at 234:22–236:14. The Court and jury ultimately agreed that Defendants' undue burden defense was not viable. *See* ECF No. 92, Order on Mot. Summ. J., at 16 ("Defendants do not satisfy their burden of persuading the court that the [written communications] accommodation was unreasonable after assessment through any cost-benefit analysis."); ECF No. 164, Jury Verdict, at 2.

9

### 3.    Expert Discovery

Defendants caused further delay and drove up costs by refusing to accept Ms. Hernandez's autism spectrum disorder diagnosis, requiring her to obtain two separate experts. First, Ms. Hernandez had to secure an unnecessary expert, Dr. Kathleen Collins, to assess Ms. Hernandez and provide a second autism diagnosis and prepare a report, *see* ECF No. 142-4, Collins Rep., to confirm what Defendants already knew: that Ms. Hernandez is autistic. Ex. 1, May Decl. ¶ 38. Plaintiff proposed that the parties stipulate this fact for trial, but Defendants refused. *See* ECF No. 142-11, Pl's Proposed Add'l Undisputed Fact 1. Defendants' obstinacy continued through the eve of trial, requiring Ms. Hernandez's counsel to spend hours preparing Dr. Collins to testify to a fact Defendants knew years before this case began, ultimately stipulating to this uncontested fact on the eve of her testimony. *Id.*

Ms. Hernandez's counsel also retained expert witness Dr. Brenda Fossett, who specializes "in the education and support of deaf individuals with autism or other neurodevelopmental disorders, with a particular focus on communication, behavior, and academic support." ECF No. 142-2, Fossett Rep., at 1. Dr. Fossett is one of the few experts in North America with experience at the intersection of Ms. Hernandez's disabilities. Ex. 1, May Decl. ¶ 37. Dr. Fossett's expert report, deposition testimony, and trial testimony helped clarify for the jury how Ms. Hernandez's multiple disabilities intersect, how they impact her life, and their relevance to Ms. Hernandez's potential damages.

To rebut Ms. Hernandez's expert, Defendants hired Dr. Robert Ross, whose knowledge and experience is significantly less precise than Dr. Fossett's. For example, Ms. Hernandez's counsel clarified at Dr. Ross's deposition that his applied behavioral analysis expertise "has nothing to do with autism," that the bulk of his experience working with individuals with hearing impairments occurred over thirty years ago, and that he did not review any materials on the

intersection of autism and hearing impairments to prepare his expert report. *See* Ex. 21, Ross Dep., at 27:9–28:2, 34:23–35:4, 60:8–25. Dr. Ross's lack of relevant qualifications forced Ms. Hernandez's counsel to file a motion *in limine* to exclude his report and proffered testimony at trial, *see* ECF No. 119-1, Pl.'s Mot. in Lim., which the court substantially granted, *see* ECF No. 149. *See* Ex. 1, May Decl. ¶ 39.

### C.    Summary Judgment and Mediation

Defendants moved for summary judgment in July 2021. *See* ECF No. 77, Defs.' Mot. Summ. J. Their accompanying Statement of Undisputed Facts contained numerous mischaracterizations and factual errors, requiring Ms. Hernandez's counsel to devote substantial time to clarifying Ms. Hernandez's version of the facts and explaining how several of the undisputed facts Defendants proffered were very much in dispute. Ex. 1, May Decl. ¶ 40; *see, e.g.*, ECF No. 77-2, Defs.' Local R. 56(a)1 Statement, ¶¶ 3, 5, 14, 22, 30, 50, 52, 68, 75; ECF No. 83-1, Pl.'s Local R. 56(a)2 Statement, ¶¶ 3, 5, 14, 22, 30, 50, 52, 68, 75. Indeed, the Court noted "that there are circumstances where contextualization is appropriate and helpful, such as when Plaintiff admitted that she did have phone conversations with members of the Board, but disagreed that they were 'often,' as Defendants had asserted." ECF No. 92, at 7. Ultimately, the Court concluded that "the great majority of Plaintiff's denials are effective, and even considering denials deemed admitted (due to insufficient supporting citation), the sum of her admissions is not dispositive of her claims, contrary to the Defendants' assertions." *Id.* at 9.

At summary judgment, Defendants also maintained that Ms. Hernandez's accommodations requests—specifically for written materials in executive sessions and closed-captioning technology—presented an undue hardship. *See* ECF No. 77-1, Defs.' Mot. Summ. J., at 31. Their lack of evidence related to the undue hardship defense caused Ms. Hernandez's counsel to spend time deducing, via depositions and interrogatory responses, that Defendants

11

were basing their defense on closed captioning, which Ms. Hernandez never actually requested. *See* ECF No. 83, Pl.'s Opp. Summ. J., at 45–46. Ms. Hernandez's counsel had to explain why the undue hardship defense presented a logical fallacy; Defendants claimed written materials would be an undue hardship because of confidentiality concerns, but also agreed to provide her with written materials. *See id.* at 45. Moreover, Ms. Hernandez pointed out in her summary judgment opposition that Defendants failed to provide Ms. Hernandez with a written statement explaining why providing her with certain accommodations would pose an undue hardship as required federal regulation. *Id.* at 38 (citing 28 C.F.R. § 35.164). These shortcomings ultimately formed the basis for the Court's order on injunctive relief. ECF No. 181.

On September 8, 2022, the Court denied Defendants' request for summary judgment as to the claims against the Board and Town and explained that Defendants failed to prove their undue burden defense. *See* ECF No. 92, Order on Summ. J, at 16 ("And Defendants' former argument is belied by the fact that at the March 2019 meeting they actually did commit themselves to providing documentary materials at executive sessions, so Defendants clearly felt that the issue of confidentiality could be managed.").

After summary judgment, Ms. Hernandez's counsel approached Defendants' counsel to request that the parties submit to a settlement conference before a magistrate judge. Ex. 1, May Decl. ¶ 41; *see* ECF No. 93, Joint Status Report, at 1. Rather than consenting outright, the Town insisted that its former insurer and the insurer's counsel participate in the settlement negotiations, citing a declaratory judgment action pending in state court. *See id.* at 1–2; *see also infra* p. 14.[3]

---

[3] That matter remains pending. *See Town of Enfield v. Travelers Indem. Co.*, No. HHD-CV21-6144598-S (Conn. Super. Ct.).

12

As requested by the Magistrate Judge and to facilitate settlement, Ms. Hernandez's counsel sent Defendants an offer on January 31, 2023 requesting: (1) injunctive relief, including that Defendants implement policies to ensure local leaders and elected officials in the Town of Enfield can request effective communication and receive auxiliary aids and services needed for effective communication; (2) $59,412.46 in out-of-pocket expenses and lost wages, and $175,000 in compensatory damages; (3) $727,310.28 in attorneys' fees and costs. Ex. 22, Jan. 31, 2023 Letter, at 5–6. Mr. Tallberg responded with a counteroffer of $25,000 total, subject to the Town and Board's approval, plus "non-monetary terms that might include training and other options." Ex. 23, Feb. 7, 2023 Email.

Ms. Hernandez and her counsel attended two mediation sessions with the hope that this case could end without the need for trial and expending further taxpayer dollars. *See* ECF No. 110. The first mediation lasted 6 hours and 37 minutes, during which the Parties did not reach a resolution. *See* ECF No. 111. On March 30, 2023, Ms. Hernandez sent Defendants another settlement offer that included a request for injunctive relief, $175,000, and either (1) payment of Ms. Hernandez's fees and costs, or (2) a stipulation that Ms. Hernandez was the prevailing party so she could seek reasonable attorneys' fees. Ex. 24, Mar. 30, 2023 Letter, at 1–4. The offer noted a considerable good faith reduction in attorneys' fees to $335,000 and again explained that Defendants would be liable for reasonable fees at trial even if recovery were limited to injunctive relief. *Id.* at 3. At the second mediation in April 2023, lasting 2 hours and 10 minutes, Defendants again refused to settle. *See* ECF No. 116.

In an effort to further limit fees and expenses, Ms. Hernandez sought Defendants' consent to proceed with a bench trial. Ex. 1, May Decl. ¶¶ 42, 55; Ex. 25, May 17, 2023 Email. Defendants refused to consent, claiming that they could not consent to a bench trial without

13

knowing "which judge would decide the case." Ex. 1, May Decl. ¶ 42; Ex. 25, May 17, 2023 Email.

### D.      Defendants' Declaratory Judgment Action

In July 2021, opposing counsel informed Ms. Hernandez's counsel the Town would be initiating a declaratory judgement action in state court against its insurer, Travelers Indemnity Co. *See Town of Enfield v. Travelers Indem. Co.*, No. HHD-CV21-6144598-S (Conn. Super. Ct.). The Town retained separate counsel for the state court declaratory judgment action, and Ms. Hernandez's counsel conferred with the Town's counsel regarding the state court action. Ex. 2, Considine Decl. ¶¶ 15–16. Ms. Hernandez's counsel made it clear that it understood Ms. Hernandez was an interested party to the action and that her counsel would be willing to accept service on her behalf.  Ex. 2, Considine Decl. ¶ 16. Nonetheless, the Town of Enfield's initial Complaint in the declaratory judgment action named Ms. Hernandez as a defendant in that proceeding. Ex. 2, Considine Decl. ¶ 17. Because Ms. Hernandez was a named defendant in the state court declaratory judgement action solely by virtue of her having filed a federal court complaint, DRCT agreed to represent Ms. Hernandez in the declaratory judgement action to protect her interests in her pending civil litigation. Ex. 2, Considine Decl. ¶ 17. DRCT, as a small nonprofit organization with limited resources, had to assign additional staff to represent Ms. Hernandez in the state court declaratory judgement action, Ex. 2, Considine Decl. ¶¶ 2, 17 particularly where cooperating with the declaratory judgment action was a pre-condition for Defendants' agreement to discuss settlement.

### E.      *Cummings v. Premier Rehab Keller*

On April 28, 2022, the Supreme Court decided *Cummings v. Premier Rehab Keller*, 596 U.S. 212 (2022). *Cummings* held that emotional distress damages are unavailable in private actions to enforce Section 504 because laws passed under the Spending Clause, such as Section

14

504, sound in contract such that recoverable damages are limited to the damages available for breach of contract. *Id.* The *Cummings* decision fundamentally altered the damages available to Ms. Hernandez—damages for which she had spent considerable time and expense pursuing prior to its issuance. Ex. 1, May Decl. ¶ 43; *see also* Ex. 26, Bien Decl. ¶ 13.

In total, Ms. Hernandez incurred the following fees and costs up and until May 2, 2023, when Defendants made their Rule 68 Offer of Compromise:

|  | **Fees** | **Expenses** |
|---|---|---|
| **DRCT** | $192,856.00 | - |
| **BGL** | $525,162.50 | $35,016.76 |
| **Total** | $718,018.50 | $35,016.76 |

## II.    Post-Rule 68 Offer of Compromise

### A.    Defendants' Offer of Compromise

On May 2, 2023, Defendants filed an Offer of Compromise under Federal Rule of Civil Procedure 68 to settle Ms. Hernandez's claims for $75,000, "inclusive of all damages, costs, expenses, and attorneys' fees." ECF No. 117, at 1. Defendants' offer required Plaintiff's counsel to conduct additional research regarding its impact on a potential jury award and attorneys' fees. Ms. Hernandez declined the offer, explaining that it failed to include injunctive relief, noting that Defendants had litigated the case vexatiously and reiterating that her attorneys' fees were "significantly higher" than the Offer. ECF No. 118, ¶¶ 2, 4–5, 8. She again offered to accept a settlement exclusive of attorneys' fees and costs. *Id.* Defendants again declined. Ex. 1, May Decl. ¶ 44.

### B.    Trial Preparation

Ms. Hernandez, bearing the burden of proof and persuasion, took the laboring oar on the Parties' Joint Trial Memo. Ex. 1, May Decl. ¶ 45. Throughout the process, Defendants refused most of Ms. Hernandez's proposed stipulations, which were largely based on Defendants' own

Local Rule 56(a)1 statement. For example, although the Court had noted that Ms. Hernandez's autism diagnosis was undisputed, citing Defendants' Motion for Summary Judgment, *see* ECF No. 92, at 1 & n.1 (citing ECF No. 77-1, Defs.' Mot. Summ. J, at 2), Defendants refused to stipulate that Ms. Hernandez has autism. Defendants further objected to nearly all of Ms. Hernandez's proposed jury instructions and her jury verdict form, requiring additional research to support her requests. In the end, the Court adopted most of Ms. Hernandez's proposed jury instructions and the bulk of her proposed verdict form.

Moreover, the parties litigated several issues in advance of trial, with Ms. Hernandez prevailing on the vast majority. To start, Ms. Hernandez filed a motion *in limine* to exclude Dr. Ross's opinions because of his lack of relevant qualifications and the conclusory nature of his report, which the Court granted in substantial part. *See* ECF No. 119, Pl.'s Mot. in Lim.; ECF No. 149. Defendants filed four motions *in limine*. *See* ECF Nos. 120–23, Defs.' Mots. in Lim. The first two sought to preclude Ms. Hernandez from seeking punitive and emotional distress damages, *see* ECF Nos. 119–20, and Ms. Hernandez conceded that punitive damages were not available, *see* ECF No. 134, Pl.'s Opp. Mots. in Lim., at 1 n.1. The Court granted Defendants' motion *in limine* related to emotional distress damages based on *Cummings* and post-*Cummings* case law but permitted Ms. Hernandez to seek damages for physical pain and suffering. *See* ECF No. 149. Defendants' third and fourth motions *in limine* sought to preclude evidence and testimony from Ms. Hernandez's experts, *see* ECF Nos. 122–23, both of which the Court denied, *see* ECF No. 149.

Ms. Hernandez sought Defendants' consent to permit Dr. Fossett, who lives in British Columbia, to testify remotely at trial. Ex. 1, May Decl. ¶ 45. Defendants refused, *see* Ex. 27, Nov. 22, 2023 Email, requiring Ms. Hernandez to file a detailed motion explaining why remote

testimony was appropriate given the length and cost of international travel and the disruption to Dr. Fossett's personal and professional obligations, *see* ECF No. 140, at 3–6. Defendants opposed the motion, *see* ECF No. 148. The Court ultimately permitted Dr. Fossett to testify remotely at trial, saving significant expert witness fees. *See* ECF No. 149.

Ms. Hernandez then spent numerous hours preparing an efficient presentation for trial, inclusive of Ms. Hernandez, her colleague on the Board, Ashley DePeau, and her two expert witnesses—one of whom was required only because Defendants would not stipulate to Ms. Hernandez's autism diagnosis. Ex. 1, May Decl. ¶ 46; Ex. 2, Considine Decl. ¶¶ 37–39. To save expenses, Ms. Hernandez proposed submitting as evidence certain deposition designations for Walter Kruzel pursuant to Federal Rule of Civil Procedure 32. *Id.* Defendants refused, maintaining that Mr. Kruzel was required to provide live testimony and forcing Ms. Hernandez's counsel to litigate the issue successfully at the pre-trial conference. *Id.* Afterward, Ms. Hernandez's counsel spent considerable time negotiating with Mr. Tallberg regarding the scope of Mr. Kruzel's deposition designations. *Id.*

In contrast to Ms. Hernandez's cost-saving efforts, Defendants named eight witnesses, requiring Ms. Hernandez's counsel to prepare to cross-examine them even though Ms. Hernandez maintained that their testimony was either cumulative or irrelevant. Ex. 1, May Decl. ¶ 47. Of the eight witnesses Defendants proposed for trial, they ultimately only called four. *Id.*

Defendants added further hours to Ms. Hernandez's counsel's trial preparation by designating small portions of ten Board meetings (some of which were in excess of two hours long) during Ms. Hernandez's elected term as exhibits. Ex. 1, May Decl. ¶ 48; *see* ECF No. 142 at 18–19. This required Ms. Hernandez's counsel to review these excerpted Board meeting recordings in their entirety with Ms. Hernandez so that she could appropriately testify as to their

17

context. Ex. 1, May Decl. ¶ 48. Counsel also was forced to provide counter-designations to the misleading nature of the excerpts Defendants identified. *Id.*

Finally, one week before jury selection began, Defendants filed a motion *in limine* to preclude Ms. Hernandez from presenting evidence of her expectation damages or damages for physical pain and suffering at trial. *See generally* ECF No. 150. The motion was untimely, *see* ECF No. 152, at 4–5 & n.3, and came after Defendants failed to respond to Ms. Hernandez's arguments about expectation damages and physical pain and suffering in her Opposition to their motion *in limine* regarding emotional distress damages, *see id.* at 5–6. In addition, the Court had ruled at the pretrial conference that Ms. Hernandez could offer proof of her physical pain and suffering and expectation damages arising therefrom. Ex. 1, May Decl. ¶ 49. Thus, while simultaneously preparing for trial, Ms. Hernandez's counsel was also forced to spend hours responding to the untimely and unnecessary motion *in limine*, which the Court ultimately denied as moot. *Id.*; *see* ECF No. 162.

### C.    Trial

At trial, the Parties prepared for and executed jury selection, despite Ms. Hernandez's offer to save costs via a bench trial. Ms. Hernandez's counsel attempted to keep the trial as narrow and focused as possible, calling only three live witnesses (Ms. Hernandez, Ashley DePeau, and Dr. Fossett) and offered Mr. Kruzel's deposition designations in lieu of live testimony. Plaintiff completed her case-in-chief in fewer than two days.

Defendants' trial presentation was significantly less tailored. Their evidence was largely irrelevant or duplicative; for example, calling two of Ms. Hernandez's Board colleagues, Scott Ryder and Tine LeBlanc, to testify about how Ms. Hernandez's lawsuit made them feel. Ultimately, Defendants omitted testimony from four witnesses—Dr. Ross, Timothy Neville,

18

Marcy Taliceo, and Liz Davis—who they had previously intended to call to testify and who Ms. Hernandez's counsel had prepared to cross-examine.

The only two substantive witnesses Defendants called were Ms. Chinni and Superintendent Drezek. Ms. Hernandez's counsel impeached Ms. Chinni using her prior statements to the Court that formed the basis of her disqualification and were inconsistent with her trial testimony that she and the Board accommodated Ms. Hernandez and that she never addressed Ms. Hernandez's accommodation requests on June 19, 2019. Superintendent Drezek confirmed that there were numerous occasions on which he committed to providing Ms. Hernandez with certain communications in writing but failed to do so. He also confirmed that he committed to providing Ms. Hernandez with confidential information in writing, but that he failed to provide such written communications multiple times while Ms. Hernandez served on the Board. Both witnesses confirmed that there were no formal policies in place that allowed elected officials to obtain auxiliary aids and services, and that Ms. Hernandez was never provided notice in writing that her accommodation requests could not be granted.

After over three days of trial, the jury found in Ms. Hernandez's favor on both her ADA and Section 504 claims. The jury specifically determined that Ms. Hernandez proved—by a preponderance of the evidence—that, because of her disabilities, Defendants excluded her from equal participation in their services, programs, or activities, denied her equal access to the benefits of their services, programs, or activities, and subjected her to discrimination in violation of both the ADA and Section 504. ECF No. 164, at 1–2. The jury further found that Defendants did not prove their undue burden affirmative defense, and that Defendants' discrimination resulted from deliberate indifference to a strong likelihood that a violation of Ms. Hernandez's rights would result. *Id.* at 2.

19

### D.      Post-Trial Briefing

In the wake of the trial, Ms. Hernandez's counsel met and conferred with Mr. Tallberg regarding injunctive and declaratory relief, as well as attorneys' fees, and asked Defendants to make an opening offer. Ex. 1, May Decl. ¶¶ 56–57. Mr. Tallberg maintained that Ms. Hernandez would not be entitled to declaratory or injunctive relief and, to date, Defendants have not since approached Ms. Hernandez for the settlement of fees. *Id.*

Accordingly, Ms. Hernandez moved for declaratory and injunctive relief. Ex. 1, May Decl. ¶ 53; *see* ECF No. 176. In their Opposition, ECF No. 177, Defendants disregarded federal disability law, ignored the jury's verdict that they intentionally subjected Ms. Hernandez to discrimination, and failed to address fully the standards for declaratory and injunctive relief, ECF No. 178, at 1. The Court granted Ms. Hernandez's motion, first awarding a declaratory judgment that Defendants violated the ADA and Section 504. ECF No. 181, at 5. The Court also issued a permanent injunction that: (1) enjoins Defendants from future ADA and Section 504 violations; (2) requires Defendants to promulgate processes and procedures "for qualified individuals with disabilities, including elected officials, to request and obtain auxiliary aids and services and reasonable modifications" and "to submit a complaint to a neutral third party if their requests are denied"; and (3) requires Defendants to notify an individual with a disability in writing, with stated reasoning, " if they determine a "request poses an undue burden or would fundamentally alter their programs or services." *Id.* at 12.

In preparing the fee petition, Ms. Hernandez's counsel sorted through four years of litigation documents and communications, as well as contemporaneous billing records. Ex. 1, May Decl., ¶ 13–14, 16–24.

In total, Ms. Hernandez incurred the following fees and costs after Defendants' Rule 68 Offer of Compromise:

|  | Fees | Expenses |
|---|---|---|
| DRCT | $191,009.00 | - |
| BGL | $365,150.00 | $24,641.62 |
| Total | $556,159.00 | $24,641.62 |

## LEGAL STANDARD

The ADA and Section 504 allow the "prevailing party" in a case to recover reasonable attorneys' fees and costs. 42 U.S.C. § 12205; 29 U.S.C. § 794a(b). Fee-shifting provisions in civil rights statutes like the ADA and Section 504 serve several purposes. First, they ensure individuals who suffer civil rights violations have "effective access to the judicial process." *Hensley*, 461 U.S. at 429 (citation omitted). Second, they encourage "competent counsel" to undertake meritorious civil rights cases despite the financial risk. *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir. 1982); *see also Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). Third, they disincentivize future civil rights violations. *Rivera*, 477 U.S. at 574–75.

Courts in the Second Circuit calculate fee awards based on three steps. First, courts must calculate a "reasonable hourly rate" considering "*all* of the case-specific variables." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). Second, courts must determine the "number of hours reasonably expended . . ." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019). Third, courts multiply the reasonable hourly rate "by the number of hours reasonably expended to determine the presumptively reasonable fee," "*i.e.*, the lodestar." *Id.* at 228, 230. Courts maintain a "strong presumption" that the lodestar is the appropriate rate. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). The lodestar may be adjusted only in the extraordinary circumstance where it

21

"does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.*

<div align="center">**ARGUMENT**</div>

**I.      Ms. Hernandez is entitled to reasonable fees and expenses.**

The jury verdict that Defendants intentionally violated the ADA and Section 504 as to Ms. Hernandez and this Court's grant of declaratory and injunctive relief render Ms. Hernandez the prevailing party and establish her eligibility for reasonable attorneys' fees. This Court should award Ms. Hernandez attorneys' fees for all hours reasonably expended by her counsel because she achieved substantial success, the hourly rates she seeks are reasonable, the number of hours expended is reasonable, and her counsel already exercised significant billing judgment.

**A.      Ms. Hernandez is the prevailing party.**

A prevailing party is one who "succeeded on any significant issue in the litigation, regardless of the magnitude of the relief obtained." *Hines v. City of Albany*, 613 F. App'x 52, 53 (2d Cir. 2015) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 757 (2d Cir. 1998)). Stated differently, a party prevails by obtaining a court order that favorably effects a "material alteration of the legal relationship of the parties . . ." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001)). A nominal damages award "modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay," *Farrar v. Hobby*, 506 U.S. 103, 113 (1992), and Ms. Hernandez's nominal damages thus suffice to make her the prevailing party. Further, the declaratory and injunctive relief she obtained renders the Board and Town "legally incapable of acting as [they] did before," effecting a material alteration of the legal relationship and conferring prevailing party status on Ms. Hernandez. *See Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143, 150 (2d Cir. 2009).

<div align="center">22</div>

### B.  Ms. Hernandez's counsels' hourly rates are reasonable.

An hourly rate is reasonable if it reflects "the rate prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 208 (2d Cir. 2005) (citation omitted, cleaned up). A "reasonable hourly rate is the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. To make this calculation, courts consider the twelve *Johnson* factors[4] and that a reasonable client "wishes to spend the minimum necessary to litigate the case effectively." *Id.* Because the rates used by Ms. Hernandez's counsel reflect prevailing market rates in Baltimore (for BGL) and throughout Connecticut (for DRCT), they are reasonable.

### 1.  Out-of-district rates are appropriate for BGL attorneys.

As a threshold matter, the Court should use out-of-district rates when calculating BGL attorneys' reasonable hourly rates. Courts in the Second Circuit may deviate from the prevailing district rate if doing so would be "reasonable under the circumstances," especially considering the *Johnson* factors. *Pawtucket Credit Union v. M/Y Sea Rayna*, 560 F. Supp. 3d 690, 695 (D. Conn. 2021). A litigant seeking out-of-district rates may overcome the presumption in favor of applying the forum district's rates "by persuasively establishing that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting

---

[4] "The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 522 F.3d at 186 n.3 (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009)). Hiring out-of-district counsel must have been "predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* (quoting *Simmons*, 575 F.3d at 176).

Ms. Hernandez acted reasonably when retaining BGL to litigate this case. BGL is a nationally recognized leader in disability rights litigation. Ex. 1, May Decl. ¶ 4; Ex. 28, Klepper Decl. ¶¶ 13, 18. The firm has decades of experience successfully representing individuals with disabilities in discrimination matters under the ADA and Section 504, Ex. 1, May Decl. ¶¶ 7–13; Ex. 26, Bien Decl. ¶¶ 11–12, 14–15; Ex. 29, Mirviss Decl. ¶ 5; Ex. 28, Klepper Decl. ¶¶ 13, 18, which weighs in favor of out-of-district rates under the ninth *Johnson* factor, "the experience, reputation, and ability of the attorneys." *See Arbor Hill*, 522 F.3d at 186 n.3 (citation omitted). In particular, BGL partner Eve Hill is a leading expert on how the ADA and Section 504 protect the rights of individuals with disabilities. Ex. 26, Bien Decl. ¶¶ 10–12; Ex. 30, Schwartz Decl. ¶ 12–13; Ex. 31, Goodell Decl. ¶ 9. And this was a case of regional, if not national, importance.[5] Ex. 30, Schwartz Decl. ¶¶ 10–11; *see also* Ex. 26, Bien Decl. ¶ 13; Ex. 32, Bildner Decl. ¶ 5. BGL has the objective experience needed to handle Ms. Hernandez's case, particularly given the need to understand the intersection of her disabilities.

Using out-of-district rates for BGL is also appropriate because using solely in-district counsel would not have produced the substantial success Ms. Hernandez obtained. BGL is a law firm with the personnel and resources to handle complicated cases. *See* Ex. 1, May Decl. ¶ 2. BGL regularly litigates complex cases like this one, which span years and require extensive

---

[5] *See* Claire Fahy, *An Autistic School Board Member Sued for Discrimination. She Won $10.*, N.Y. Times (Feb. 1, 2024), https://www.nytimes.com/2024/02/01/nyregion/autism-discrimination-lawsuit.html?searchResultPosition=1.

motions practice and discovery, as well as a team of partners, associates, and paralegals. *See* Ex. 1, May Decl. ¶¶ 2, 4–5; Ex. 30, Schwartz Decl. ¶ 16. Local counsel, DRCT, is a non-profit advocacy organization. Ex. 2, Considine Decl. ¶¶ 2, 48. DRCT lacked the staffing capability and funding needed to litigate this time- and resource-intensive matter on its own, and Ms. Hernandez would have achieved "a substantially inferior result" if BGL had not co-counseled with DRCT. Ex. 2, Considine Decl. ¶¶ 4, 33.

Additionally, other Connecticut attorneys would have been extremely reluctant to take this case on a *pro bono* or contingency basis (as would have been required) because ADA and Section 504 cases can be complex and time-consuming. *See* Ex. 30, Schwartz Decl. ¶¶ 4–5; Ex. 32, Bildner Decl. ¶ 5; Ex. 31, Goodell Decl. ¶ 13. *Johnson* factors six and ten thus weigh in favor of awarding out-of-district rates. The "undesirability" of Ms. Hernandez's case—given the complexity and upfront costs associated with litigating—plus that BGL was able to take the case on a contingency-fee basis, are objective factors supporting that Ms. Hernandez would have obtained an inferior result without BGL's involvement. *See Arbor Hill*, 522 F.3d at 186 n.3. Indeed, if BGL had not joined, this case would not have been litigated. Ex. 2, Considine Decl. ¶¶ 4, 33; *see also* Ex. 28, Klepper Decl. ¶ 10.

### 2.    The rates charged by BGL and DRCT are reasonable.

BGL requests hourly rates in the amount of $525–$725 per hour for partners, $360–$450 per hour for associates, and $250–$300 per hour for paralegals. Ex. 28, Klepper Decl. ¶ 16; Ex. 29, Mirviss Decl. ¶ 6. DRCT requests hourly rates of $650–$450 for attorneys and $250 for its legal interns and assistant. Ex. 2, Considine Decl. ¶ 26; Ex. 31, Goodell Decl. ¶ 7. BGL and DRCT's rates are reasonable for several reasons.

25

For BGL, the requested rates are the regular rates that the firm charges its fee-paying clients,[6] Ex. 1, May Decl. ¶ 14, which aligns with the fifth *Johnson* factor. *See Arbor Hill*, 522 F.3d at 186 n.3. These rates are well within the norms of billing rates in the Baltimore community for comparable attorneys performing similar work. Ex. 1, May Decl. ¶ 15; Ex. 28, Klepper Decl. ¶ 17; Ex. 29, Mirviss Decl. ¶ 7. Moreover, BGL's rates are in line with or lower than the rates customarily charged by attorneys of similar levels of experience at law firms across the country that, like BGL, specialize in complex litigation under the ADA and Section 504. Ex. 1, May Decl. ¶ 16; Ex. 26, Bien Decl. ¶ 9; Ex. 30, Schwartz Decl. ¶ 18. Outside of BGL's home state of Maryland, courts have awarded BGL the rates it charges its fee-paying clients, or higher. *See, e.g.*, *Bone v. Univ. of N.C. Health Care Sys.*, No. 1:18CV994, 2024 WL 1014164, at *19 (M.D.N.C. Mar. 8, 2024) (awarding Eve Hill a rate of $725 per hour); *Elder v. Nat'l Conf. of Bar Examiners*, No. C 11-00199 SI, 2011 WL 4079623, at *4 & n.4 (N.D. Cal. Sept. 12, 2011) (concluding that a BGL senior partner's rate of $760 was reasonable); *Nat'l Fed'n of the Blind v. Target Corp.*, No. C 06-01802 MHP, 2009 WL 2390261, at *3 (N.D. Cal. Aug. 3, 2009) (concluding that BGL senior partner's rate of $700 was reasonable based on Pearl Declaration cited in order).

DRCT is also entitled to recover the prevailing billing rates of Connecticut attorneys in private practice with similar skill and experience. *See Blum v. Stenson*, 465 U.S. 886, 894–95 (1984) (hourly rates for public interest attorneys must equal prevailing private market rates). DRCT's requested rates are within the norms of billing rates in Connecticut for similar work. Ex.

---

[6] Although this case was initially filed in 2019, Ms. Hernandez seeks reimbursement for fees at her attorneys' 2024 hourly rates. Ex. 1, May Decl. ¶ 13; *see Parris v. Pappas*, 844 F. Supp. 2d 262, 266 (D. Conn. 2012) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment." (quoting *LeBlanc-Sternberg*, 143 F.3d at 764)).

26

2, Considine Decl. ¶¶ 22–24, 47; Ex. 31, Goodell Decl. ¶¶ 4, 7, 8; Ex. 32, Bildner Decl. ¶¶ 8–9, 12.

### C.    The number of hours Ms. Hernandez's counsel expended is reasonable.

A fully compensatory fee will generally "encompass all hours reasonably expended . . ." *Hensley*, 461 U.S. at 435. Hours are reasonable if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.3d 96, 99 (2d Cir. 1992) (citation omitted). "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted).

Ms. Hernandez's fee petition is "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *See Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (citation omitted); Ex. 1, May Decl. ¶ 20; Ex. 2, Considine Decl. ¶¶ 28–29. The billing records provided contain detailed explanations of the work corresponding to each entry, recorded by the tenths of an hour for maximum accuracy. Ex. 1, May Decl. ¶ 20 & Exs. 1-A, 1-B; Ex. 2, Considine Decl. ¶ 28 & Exs. 2-A, 2-B. Ms. Hernandez requests reimbursement for the 779.6 hours DRCT attorneys and staff spent on this case, and the 1945.5 hours BGL attorneys and paralegals spent. As set forth below, the hours expended are reasonable. *See also* Ex. 31, Goodell Decl. ¶ 14 ("BGL and DRCT reasonably spent about 3,000 hours pursuing this litigation over the course of five years.").

### 1.    Ms. Hernandez's counsel achieved substantial success, and the injunction the Court issued serves the public interest.

Prevailing in litigation establishes a plaintiff's eligibility for a fee award, after which the

27

district court must determine "what constitutes a 'reasonable' fee." *LeBlanc-Sternberg*, 143 F.3d at 758. Where a plaintiff succeeds on some of her claims, the "degree of success obtained" is the most critical "factor in determining a reasonable fee." *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 934 F.3d 238, 245 (2d Cir. 2019). When evaluating fees for a prevailing plaintiff who sought monetary and equitable relief, "the size of the monetary recovery is not necessarily the proper measure of the plaintiff's success." *LeBlanc-Sternberg*, 143 F.3d at 758. A "substantial fee award may be justified" where a plaintiff's injunctive relief "carries a 'systemic effect of importance' or serves a 'substantial public interest.'" *Id.* at 760 (quoting *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997)).

Here, Ms. Hernandez achieved a significant degree of success, satisfying the "results obtained" *Johnson* factor. *See Arbor Hill*, 522 F.3d at 186 at n.3. In particular, she was awarded declaratory relief that Defendants violated the ADA and Section 504 and a permanent injunction that serves the public interest. The injunction mandates that Defendants create policies for individuals with disabilities "to request and obtain auxiliary aids and services and reasonable modifications" and "to submit a complaint to a neutral third party if their requests are denied." ECF No. 181, at 12. Where the Board and the Town deny a request, the injunction requires them to "provide a written statement to the individual with a disability describing the reasons for reaching that conclusion." *Id.*

In a similar case, plaintiffs in a religious discrimination lawsuit obtained a favorable jury verdict, nominal damages, and an injunction prohibiting the defendant from further discrimination. *LeBlanc-Sternberg*, 143 F.3d at 759. The Second Circuit noted that the injunction would benefit the plaintiffs as well as other religious groups in their village and held that the plaintiffs were entitled to "a substantial fee award" for their victory that served the public

28

interest. *Id.* at 760. So, too, here. The injunction Ms. Hernandez obtained is a victory for her as well as all other individuals with disabilities in the Town of Enfield. Her injunctive relief "carries a 'systemic effect of importance'" by making it more accessible for individuals with disabilities to participate in local civic affairs in the Town of Enfield. *Id.*; *see* Ex. 32, Bildner Decl. ¶ 6. As such, Ms. Hernandez is entitled to a substantial fee award for all hours reasonably expended by her counsel.

**2.     Ms. Hernandez's counsel should be compensated for the time reasonably expended on her claim for emotional distress damages.**

The Court may award attorneys' fees "for unsuccessful claims as well as successful ones" if the unsuccessful claims "are 'inextricably intertwined' and 'involve a common core of facts or are based on related legal theories.'" *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citation omitted). Here, Ms. Hernandez was unsuccessful in obtaining compensatory damages, primarily because the Supreme Court's decision in *Cummings v. Premier Rehab Keller* precluded her from seeking the damages for emotional distress she described in her Complaint. Ex. 1, May Decl. ¶¶ 43, 56; *see also* ECF No. 1, ¶¶ 20, 22, 25–27; Ex. 26, Bien Decl. ¶ 13.

Ms. Hernandez's claim for compensatory damages arises from the same common core of facts as her other claims: the Board and Town's failure to ensure her effective communication, equal access, and equal opportunity to participate during her term as an elected member of the Board. Her counsel's research, discovery, and efforts related to proving her entitlement to compensatory damages is "inseparable" from their work on the other relief she sought. *See Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 108–09 (2d Cir. 2022) (awarding attorneys' fees for work on unsuccessful and successful claims where the claims all arose from the plaintiffs' "conditions of employment" and "the discovery involved in litigating" the unsuccessful claims was "inseparable" from the discovery related to the successful claims). Ms.

29

Hernandez should therefore be awarded reasonable attorneys' fees for her counsel's work on her compensatory damages claim.

### 3.    Defendants needlessly complicated and prolonged this litigation.

As detailed above, Ms. Hernandez's counsel expended significant time on this case because of Defendants' aggressive and dilatory litigation tactics. Ex. 1, May Decl. ¶¶ 53–57. From the start, Defendants attempted to use an attorney clearly conflicted out of this matter, provided expansive internet links instead of documents in response to Ms. Hernandez's written discovery requests, provided written discovery on the evening before or day of depositions, and failed to respond to some written discovery at all, such as failing to search Ms. Hernandez's Board email account. *See* Ex. 1, May Decl. ¶¶ 30, 32. Defendants asserted an undue hardship defense without considering whether it was viable. *See* Ex. 1, May Decl. ¶¶ 36, 52. They forced Ms. Hernandez to obtain a second expert witness Dr. Collins to confirm her autism diagnosis, then fought the diagnosis up until the eve of Dr. Collins's trial testimony, despite the Court finding that this fact was undisputed at summary judgment. *See* Ex. 1, May Decl. ¶ 37. Defendants hired a rebuttal expert lacking relevant qualifications, and rejected stipulations before trial that came from their own Local Rule 56(a)1 statement of facts. *See* Ex. 1, May Decl. ¶¶ 39, 46–47, 55. They have consistently refused to consent to Ms. Hernandez's cost-saving proposals, such as having a bench trial and having Dr. Fossett testify remotely at trial. *See* Ex. 1, May Decl. ¶¶ 42, 46, 55. All of these tactics—as well as many others—prolonged the litigation and drove up costs. *See* Ex. 1, May Decl. ¶¶ 45, 54–57.

Moreover, for over four years, Defendants rejected at least five settlement offers, all of which would have resulted in significantly lower fees and expenses than Ms. Hernandez now seeks. Ex. 1, May Decl. ¶ 45, 53, 57; Ex. 2, Considine Decl. ¶¶ 24, 35. The five offers, which are detailed in the Statement of Facts, are listed below:

| Date | Offer |
|---|---|
| September 16, 2019 | $35,000 in damages and "modest" attorneys' fees. |
| September 22, 2020 | Injunctive relief, $150,000 in damages, and $109,161.32 in attorneys' fees and costs. |
| January 31, 2023 | Injunctive relief, $175,000 in compensatory damages, $59,412.46 in out-of-pocket expenses and lost wages, and $727,310.28 in attorneys' fees and costs. |
| March 30, 2023 | Injunctive relief, $175,000 in damages, and either (1) fees and costs or (2) a stipulation that Ms. Hernandez is a prevailing party so she could seek reasonable attorneys' fees. |
| May 16, 2023 | Accept settlement offer from Defendants with injunctive relief and exclusive of attorneys' fees and costs |

Ex. 1, May Decl. ¶ 45.

After causing Ms. Hernandez's counsel to spend unnecessary time and resources on this matter, and after refusing multiple attempts to keep costs down, Defendants cannot now protest that they are responsible for the fees and expenses her counsel has incurred. *See Rivera*, 477 U.S. at 580 n.11 ("The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."). Here, Defendants not only litigated tenaciously—they needlessly prolonged and complicated this case, which increased the "time and labor required" to prevail—another *Johnson* factor favoring recovery of Plaintiff's full lodestar fees. *See Arbor Hill*, 522 F.3d at 186 n.3.

**D.    Ms. Hernandez may recover fees and costs incurred after Defendants' Rule 68 Offer of Judgment.**

Defendants' May 2, 2023, Offer of Compromise under Federal Rule of Civil Procedure 68 was "inclusive of all damages, costs, expenses, and attorneys' fees available under all local, state, and federal statutes accrued to date." ECF No. 117, at 1. Accordingly, Ms.

31

Hernandez can recover the fees and costs she incurred post-Offer of Compromise only if the amount of her judgment plus "the fees and costs accrued as of the date of the Rule 68 Offer" is higher than the $75,000 of the Offer of Compromise. *See Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 58 (2d Cir. 2012). The table below presents the fees and expenses Ms. Hernandez incurred before and after the Offer of Compromise:

|  | Pre-Offer Fees | Post-Offer Fees | Pre-Offer Expenses | Post-Offer Expenses[7] |
|---|---|---|---|---|
| DRCT | $192,856.00 | $191,009.00 | - | - |
| BGL | $525,162.50 | $365,150.00 | $35,016.76 | $24,641.62 |

Because the fees and expenses Ms. Hernandez accrued as of May 2, 2023, were greater than Defendants' $75,00 Offer of Compromise inclusive of attorneys' fees, Ms. Hernandez may recover all reasonably attorneys' fees and expenses incurred throughout this litigation.

**E.    Because Ms. Hernandez's counsel has already exercised billing judgment, the Court should not further reduce the lodestar amount.**

Ms. Hernandez's counsel's billing judgment significantly reduced the amount of fees sought—by over 22.8% and 18% for BGL and DRCT, respectively. Ex. 1, May Decl. ¶ 24, Exs. 1-A–1-B; Ex. 2, Considine Decl. ¶ 45, Exs. 2-A, 2-B.

For example, BGL deducted all fees for any timekeeper who billed fewer than ten hours on the case, and removed billing lines for all administrative tasks, such as scheduling meetings, drafting agreements, and managing discovery productions and responses. Ex. 1, May Decl. ¶ 23. Additionally, BGL spent considerable time researching potential expert witnesses given the intersection of Ms. Hernandez's disabilities, for which time Ms. Hernandez is not seeking fees. *Id.*

---

[7] As noted, *supra* n.1, DRCT and BGL's expenses are combined.

DRCT's exercise of billing judgement included reviewing which activities were billable and even where billable, reviewing which time entries should otherwise be omitted. Ex. 2, Considine Decl. ¶ 42. DRCT also omitted altogether several legitimate, case related activities such as fielding and responding to media inquiries, internal case review meetings where all assigned cases, including Ms. Hernandez's case, were discussed, and consultations with professional colleagues on complex issues like DRCT's grant funding. Ex. 2, Considine Decl. ¶ 43. DRCT omitted time entries that could be perceived as excessive or unreasonably duplicative of work by co-counsel. Ex. 2, Considine Decl. ¶ 44. For example, DRCT omitted all time expended by Mr. Michael Whilby during trial, to eliminate any duplication with BGL. Ex. 2, Considine Decl. ¶ 44. Where Mr. May and Ms. Considine were both present on behalf of Ms. Hernandez, such as during settlement conferences, depositions, and conferrals with opposing counsel, counsel discussed and agreed which time entries each firm would omit. Ex. 2, Considine Decl. ¶ 36. In addition to omitting duplicative charges between DRCT and BGL, DRCT omitted duplicative charges amongst its own staff. For example, where two DRCT attorneys were present, such as during the Pretrial Conference and jury selection, DRCT only charged for one attorney's time. Ex. 2, Considine Decl. ¶¶ 36, 39. Accordingly, given Plaintiff's counsels' diligence in exercising reasonable billing judgment, an award of the lodestar fees as requested is appropriate.

II.    **Ms. Hernandez is entitled to reimbursement of her litigation expenses, including expert fees.**

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg*, 143 F.3d at 763 (citation omitted). Normal law office overhead costs "must normally be absorbed within the attorney's hourly rate," but out-of-pocket expenses such as printing, photocopying, travel, and postage

33

"may ordinarily be recovered." *Id.* (quoting *Kuzma v. I.R.S.*, 821 F.2d 930, 933–34 (2d Cir. 1987)). The cost of online legal research, such as on Westlaw, is also reimbursable as a litigation expense. *See Rand-Whitney Containerboard v. Town of Montville*, No. 3:96CV413 (HBF), 2006 WL 2839236, at \*24 (D. Conn. Sept. 5, 2006) (citing *Arbor Hill*, 369 F.3d at 98). Additionally, the ADA expressly provides that prevailing plaintiffs may recover expert witness fees as part of their litigation costs. 42 U.S.C. § 2000e-5(k); *Hernandez v. Berlin Newington Assocs., LLC*, No. 3:10-cv-01333 (VLB), 2016 WL 5339720, at \*7 (D. Conn. Sept. 22, 2016).

Here, Ms. Hernandez seeks reimbursement of $59,658.38 in litigation costs. Some of these costs are for travel expenses and deposition transcripts, which are routinely advanced by attorneys and reimbursed by clients. Ex. 1, May Decl. ¶ 25–27, Ex. 1-C. Ms. Hernandez also seeks reimbursement for expert fees. Ex. 1, May Decl. ¶ 25–26, Exs. 1-C–1-E. Both of Ms. Hernandez's experts, Dr. Kathleen Collins and Dr. Brenda Fossett, authored expert reports and deposition testimony, and Dr. Fossett testified at trial. Dr. Collins's confirmation of Ms. Hernandez's autism diagnosis was instrumental in establishing Ms. Hernandez as a qualified individual with a disability, particularly when Defendants refused to stipulate to the diagnosis pre-trial. Dr. Fossett's trial testimony was vital for the jury to understand the intersection of Ms. Hernandez's multiple disabilities, how her disabilities impact her life, and the relevance of her disabilities to potential damages. *Id.*

## CONCLUSION

For the foregoing reasons, the Court should grant Ms. Hernandez's motion for attorneys' fees, expenses, and costs.

34

Dated: July 1, 2024.

<div align="center" style="margin-left:40%">

Respectfully submitted,

/s/ Kasey Considine
Deborah A. Dorfman (*pro hac vice*)
Kasey Considine (Fed. Bar No. CT 30756)
Disability Rights Connecticut
75 Charter Oak Ave., Ste. 1-101
Hartford, CT 06106
Phone: (860) 297-4300
Fax: (860) 296-0055
Deborah.Dorfman@disrightsct.org
Kasey.Considine@disrightsct.org

Eve L. Hill (Fed. Bar No. MD 19938), *pro hac vice*
Anthony May (Fed. Bar No. MD 20301), *pro hac vice*
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 2500
Baltimore, MD 21202
Phone: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold.com
amay@browngold.com

*Counsel for Plaintiff Sarah Hernandez*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of July 2024, the foregoing Memorandum in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and Costs was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.



/s/ Kasey Considine