UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SARAH HERNANDEZ, | : | CIV. NO. 3:19-CV-01907 (SRU) |
| Plaintiff, | : | |
| vs. | : | |
| | : | |
| THE TOWN OF ENFIELD and | : | |
| ENFIELD BOARD OF EDUCATION, | : | AUGUST 21, 2024 |
| Defendants. | | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES AND COSTS

Defendants Town of Enfield (the "Town") and the Enfield Board of Education (the "Board") (collectively, the "Defendants"), hereby object to plaintiff's Motion for Attorneys' Fees, Expenses, and Costs [ECF No. 183-1], dated July 1, 2024, and request that such motion be denied or, at the very least, that the award of attorney's fees be drastically reduced.

## I.      INTRODUCTION

On January 11, 2024, following a jury trial, Plaintiff obtained a verdict in her favor on her Americans with Disabilities Act ("ADA") Title II and Rehabilitation Act § 504 ("Section 504") claims against Defendants, including a compensatory damage award of Ten Dollars and Zero Cents ($10.00) [ECF No. 164].  Thereafter, Plaintiff moved for declaratory and injunctive relief, which motion the Court granted, over Defendants' objection, on or about June 14, 2024 [ECF No. 181].  Judgment entered in Plaintiff's favor on June 17, 2024 [ECF No. 182].  Plaintiff now moves for an award of attorney's fees and costs as a "prevailing party" under 42 U.S.C. § 1988.  Because Plaintiff ultimately recovered an amount of damages less than the amount offered by the Defendants in a Rule 68 Offer of Judgment, and for the following

additional reasons, Plaintiff's exorbitant fee claim must be denied or, at the very least, significantly reduced to a more reasonable sum.

## II. LAW AND ARGUMENT

### A. LEGAL STANDARD

The well-established rule regarding a plaintiff in a federal civil rights action who seeks compensatory damages, but only recovers nominal damages, is that they are ordinarily not entitled to an award of attorney's fees. Farrar v. Hobby, 506 U.S. 103 (1992). This has been the case for well over thirty (30) years, because to allow for the recovery of attorney's fees after a nominal damage award would create a windfall for attorneys who were, ultimately, unable to prove entitlement to compensatory damages. See Riverside v. Rivera, 477 U.S. 561, 580 (1986) (plurality opinion) (relying on S. Rep. No. 94-1011, p. 6 (1976) U.S. Code Cong. & Admin. News 1976 pp. 5908, 5913). This is precisely what plaintiff in this case seeks to do by demanding an award of $1,274,177.50 in attorney's fees, and $59,658.38 in costs, for recovering a nominal damage award of $10.[1]

In civil rights cases, the court has discretion to award reasonable attorneys' fees and costs to the "prevailing party." 42 U.S.C. § 1988(b); see also 42 U.S.C. § 2000e-5(k). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Robles v. City of New York, No. 19-CV-6581, 2021 WL 1034773, at *14 (S.D.N.Y. Feb. 26, 2021) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1933)).

---

[1] At trial, plaintiff sought to recover compensatory damages in excess of $150,000. See, e.g., Ex. 15 to Pl.'s Mot. Attorney's Fees ("September 22, 2020 Letter"); Pl.'s Damages Analysis, 7/1/20, submitted as Exhibit A.

In 2008, the Second Circuit adopted the "reasonable hourly rate" approach to determining attorney's fees awards, in place of the previous "loadstar amount" standard. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 190 & n.4 (2d Cir. 2008). Now, in determining the amount of a reasonable fee award, courts set a "reasonable hourly rate," bearing in mind all the case-specific variables, and then use that reasonable hourly rate to calculate the "presumptively reasonable fee" by multiplying the rate by the number of hours reasonably expended. <u>Arbor Hill</u>, 522 F.3d at 190; <u>see</u> <u>Porzig v. Dresdner, Kleinwort, Benson, North America LLC</u>, 497 F.3d 133, 141 (2d Cir. 2007) ("The presumptively reasonable fee analysis involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award."). <u>Adorno v. Port Auth. of New York & New Jersey</u>, 685 F. Supp. 2d 507, 510-11 (S.D.N.Y. 2010), <u>on reconsideration in part</u>, No. 06 CIV. 593 (DC), 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010).

The determination of an award of attorney's fees under § 1988 is committed to the sound discretion of the district court because the appropriate amount is "dependent on the unique facts of each case." <u>Raja v. Burns</u>, 43 F.4th 80, 86 (2d Cir. 2022) (citing <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992).

**B. PLAINTIFF OBTAINED ONLY LIMITED SUCCESS AT TRIAL BASED ON THE NOMINAL DAMAGES AWARDED BY THE JURY AND THE MINIMALLY INVASIVE EQUITABLE RELIEF AWARDED BY THE COURT**

Because Plaintiff obtained a technical victory on both claims alleged in her complaint, she may be considered a "prevailing party" for purposes of requesting attorney's fees post-verdict, notwithstanding the limited nature of her recovery. <u>See</u> <u>Pino v. Locascio</u>, 101 F.3d 235,

238 (2d Cir. 1996) ("Plaintiffs who win nominal damages are, indeed, prevailing parties for purposes of fee awards.")  A significant reduction in the requested amount of attorney's fees is warranted here, however, in light of the large disparity between Plaintiff's nominal damage award and the total amount she sought as compensation for the full value of the damages she alleged that she suffered.  See id. ("In short, while there is no *per se* rule that a plaintiff recovering nominal damages can never get a fee award, Farrar indicates that the award of fees in such a case will be rare").

Although the "technical" nature of a nominal damages award or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of the amount of attorney's fees awarded to the prevailing party under § 1988.  The awarding of nominal damages "highlights the plaintiff's failure to prove actual, compensable injury." Farrar, 506 U.S. at 115.

When a plaintiff recovers only nominal damages because of her failure to prove an essential element of her claim for monetary relief, "the only reasonable fee is usually no fee at all."  Farrar, 506 U.S. at 115.  That is, "in some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all.  A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party."  Id.; see also Carey v. Piphus, 435 U.S. 247, 266 (1978) ("As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his 'absolute' right to procedural due process through enforcement of a judgment against the defendant.").

"The most important factor in determining a reasonable fee for a prevailing plaintiff is the degree of success obtained." Watrous v. Borner, 995 F. Supp. 2d 84, 89 (D. Conn. 2014); see

also <u>Farrar</u>, 506 U.S. at 114. In <u>Farrar v. Hobby</u>, the Supreme Court addressed the "degree of success" factor in a case where the jury awarded the plaintiff $1 in nominal damages for alleged constitutional violations. <u>Farrar</u>, 506 U.S. at 114. The plaintiff in <u>Farrar</u> received nominal damages instead of the $17 million in compensatory damages he initially sought. <u>Id.</u>, at 106. In evaluating a challenge to the plaintiff's claim for attorney's fees, the United States Supreme Court reasoned that, "[w]here recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." <u>Id.</u>, at 114. The Court observed in its ruling that the litigation had accomplished little beyond giving petitioners "the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated." <u>Id.</u>; <u>see also</u> <u>Hewitt v. Helms</u>, 482 U.S. 755, 762 (1987). Based on this, the Court affirmed the Circuit Court of Appeals' decision vacating the fee award previously granted by the trial court. <u>Farrar</u>, 506 U.S. at 115.

Here, Plaintiff sought damages in excess of $150,000. <u>See</u> September 22, 2020 Letter, Pl.'s Ex. 15. At trial, plaintiff recovered $10.00. As to one defendant, Walter Kruzel, plaintiff had zero success because all claims against Mr. Kruzel were dismissed at the summary judgment stage. Plaintiff did not prove entitlement to any measure of compensatory damages at trial and, as such, this Court properly may determine that no attorney's fee award is warranted. <u>See</u> <u>Farrar</u>, 506 U.S. at 14 (above); <u>Carlton v. C.O. Pearson</u>, 384 F. Supp. 3d 382, 389 (W.D.N.Y. 2019) (denying civil rights plaintiff a reasonable attorney's fee award based on recovery of only nominal damages); <u>Haywood v. Koehler</u>, 885 F. Supp. 624, 629-30 (S.D.N.Y. 1995) ("The Court's conclusion not to award attorney's fees in this case is reinforced by the Court of Appeals

5

recent decision in <u>Caruso v. Forslund</u>, 47 F.3d 27 (2d Cir. 1995), where the court reiterated <u>Farrar</u>'s finding that a court should not usually award attorney's fees . . . when the jury has awarded only nominal damages.").

Defendants recognize, however, that Plaintiff's success in obtaining injunctive and declaratory relief in addition to her nominal damage award may entitle her to recover *some* amount as a reasonable attorney's fee. As such, Defendants ask this Court to utilize its broad discretion to significantly reduce plaintiff's nearly $1.3 million dollar fee claim to an amount more appropriately reflective of her technical victory and her failure to prove that she suffered any compensable harm at Defendants' hands. <u>Farrar</u>, 506 U.S. at 115; <u>see</u> <u>Hensley</u>, 461 U.S. at 436 (if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.").

That is, although Plaintiff succeeded in obtaining declaratory and injunctive relief post-verdict based on her nominal damage award – which injunctive relief requires only minor language adjustments to the Town and Board's ADA and Section 504 policies already in place and, thus, can hardly be described as an "alteration of the legal relationship of the parties," <u>see</u> <u>Roberson v. Giuliani</u>, 346 F.3d 75, 79-80 (2d Cir. 2003) – such equitable awards do not entitle Plaintiff to her full attorney's fee based on the limited nature of her post-trial recovery.

Plaintiff's theory at trial, and in her request for injunctive relief, was that although the Town and Board both had ADA policies in place – introduced at trial as Defendants' Exhibits 519 and 520 – those policies did not explicitly state that they applied to elected officials. Boiled down to its essence, the Court's Permanent Injunction Order includes four components, which

6

essentially require the Defendants to: (a) comply with the law; (b) promulgate [update] their policies and procedures to include elected officials; (c) include a process for qualified individuals, including elected officials, to submit a complaint to a neutral third party; and (d) provide a written statement to any individual who is denied an accommodation based on a claim of undue burden. [ECF No. 181]. As reported to Plaintiff's counsel, Defendants have already begun the process to update their policies and procedures to comply with the Court's Order, which does not materially alter the relationship between the parties and thus, should not be credited as a significant victory entitling Plaintiff to a fee award that is so disproportionate to the outcome at issue.

### C. PLAINTIFF'S FEE CLAIM SUFFERS FROM VAGUENESS AND UNREASONABILITY AND SHOULD BE REDUCED ACCORDINGLY

Plaintiff's fee claim, which exceeds $1.2 million dollars, is wildly disproportionate to the $10 nominal award she received at trial. Certain defects in Plaintiff's billing records submitted in support of her motion, however, lack sufficient specificity; are unreasonable in the amount of time expended; and/or seek reimbursement for participation in related but separate case proceedings, each of which serves as an independent basis to reduce the amount of fees awarded. Because these billing practices cannot be countenanced, such entries should not be awarded as part of Plaintiff's attorney's fee recovery.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437; Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done."). Where billing records

are vague or demonstrate unreasonable duplication of efforts disproportionate to the needs of the particular task at hand, courts are empowered to utilize their discretion to reduce the amount awarded in attorney's fees accordingly. Mr. X v. New York State Educ. Dep't, 20 F. Supp. 2d 561, 564 (S.D.N.Y. 1998) ("to account for these vague and duplicative time entries, the court reduces the amount requested by plaintiffs by 20%."); Rabin v. Wilson-Coker, 425 F. Supp. 2d 269, 272-73 (D. Conn. 2006) (reducing the number of hours by five percent because the billing records contained entries such as "work on brief," even though most of the time entries were sufficiently detailed); Mr. & Mrs. B. v. Weston Bd. of Educ., 34 F. Supp. 2d 777, 781 (D. Conn. 1999) ("Entries stating such vague references as 'review of file,' 'review of correspondence,' 'research,' 'conference with client,' and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter."); Valley Housing Ltd. Partnership v. City of Derby, No. 3:06-cv-1319 (TLM), 2012 WL 1077848, at * (D. Conn. Mar. 30, 2012) ("read depositions," "prepare for trial," and "prepare for court" deemed vague).

Additionally, "[a]ttorney's fees must be reasonable in terms of the circumstances of the particular case." Alderman v. Pan Am World Airways, 169 F.3d 99, 102 (2d Cir.1999); Kassim v. City of Schenectady, 415 F.3d 246, 251 (2d Cir. 2005) (noting that "when the narrow issue *and final result* are taken into consideration, [the hours claimed] are entirely excessive, redundant, and unnecessary," (emphasis in original)). "There is no precise rule or formula for determining a proper attorney's fees award; rather, the district court should exercise its equitable discretion in light of all relevant factors." Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 48 (S.D.N.Y. 2015) (alteration and internal quotation marks omitted); Congregation

<u>Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona</u>, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016). The Court may, accordingly, refuse to grant fee requests for time entries that are excessive or redundant. <u>See</u> <u>Hensley</u>, 461 U.S. at 434; <u>Williams v. New York City Housing Auth.</u>, 975 F. Supp. 317, 325 (S.D.N.Y. 1997). And, it bears mentioning that billing for travel time is generally reimbursed at only 50% of the attorney's regular hourly rate. <u>Id.</u> at 324.

### 1. Vagueness

Courts in this circuit have found that "vague entries such as 'conference with' or 'call to' a specific person" generally lack sufficient specificity, while "time entries that refer to unspecified communications with unidentified 'outside counsel' or 'colleagues' " are "plainly inadequate." <u>Tucker v. City of New York</u>, 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (citations omitted); <u>see</u> <u>also</u> <u>Osterweil v. Bartlett</u>, 92 F. Supp. 3d 14, 30 (N.D.N.Y. 2015); <u>Williamsburg Fair Housing Committee v. New York City Housing Auth.</u>, No. 76 Civ. 2125, 2005 WL 736146 at *10 (S.D.N.Y. Mar. 31, 2005) (finding time entries that "fail[ed] to indicate the subject matter of telephone calls, conferences, and documents reviewed and drafted, or otherwise provide context by referring to specific issues or events in the case" impermissibly vague); <u>People ex rel. Vacco v. Rac Holding, Inc.</u>, 135 F. Supp. 2d 359, 364 (N.D.N.Y. Mar. 21, 2001) (reducing a fee award based on impermissibly vague time entries that "indicate[d] merely that a phone call was made or a meeting attended without describing the nature of the discussions therein").

Here, Plaintiff's attorneys' billing records demonstrate issues with vagueness. That is, a number of billing entries lack a specific purpose or other information about the task being performed that a court would require to determine whether such time has been reasonably expended. For example, in DRC's billing records, pages 8-11 of Plaintiff's Exhibit 2-A contain

entries by Attorney Considine described only as "Client Communication" (Ex. 2-A at 8, entry date 1/28/21 and 9, entry date 3/1/21); and "Review Client's Records" (Ex. 2-A at 9, entry date 2/22/21, and 11, entry date 4/16/21). Further, Attorney Considine includes various billing entries for "research" without indicating the purpose or motion for which the research is being conducted. See, e.g., Pl.'s Ex. 2-A, at 1 ("Research Town of Enfield"; "Research re: Board of Education meeting minutes"); 2 ("Research re: Town and Board of Enfield [sic] budgets, line items"); 16 ("Legal research re: Connecticut Practice Book, declaratory judgment action"); 17 ("Research re: joint trial memo"; "Legal research re: jury instructions"); 21 ("Legal research re: damages"; "Research re: jury verdicts, settlement amounts"); and 22 ("Legal research re: FRCP R. 68"; "Legal research re: jury instructions"; "research/email re local rules, TOA TOC").

While in some instances certain otherwise vague time entries are seemingly clarified when reviewed in context with entries that precede or follow it, many entries remain vague and prevent this Court from accurately determining whether such time was reasonably expended. See Kreisler v. Second Ave. Diner Corp., No. 10-CV-7592, 2013 WL 3965247, at *3 (S.D.N.Y. July 31, 2013) ("[A] court has discretion to impose an across-the-board reduction for vague billing entries that prevent the court from determining if the hours billed were excessive."). Thus, to the extent impermissibly vague and/or redundant nature of certain billing entries, this Court should apply an appropriate across-the-board reduction to the amount of fees recoverable.

### 2. Duplicative Entries/Unreasonable Time Expended

Further, plaintiffs' records contain several entries by various individuals, including attorneys and non-attorney staff, that demonstrate undisciplined billing practices and duplicative efforts that grossly inflate the number of hours expended on billable tasks. See, e.g., Pocius v.

Sec. Auto Sales Inc., No. 16 CV 400, 2018 WL 3999649, at *5 (E.D.N.Y. July 6, 2018) (reducing attorney's fees by 30% where billing entries "include either duplicative or plainly excessive time"), report & recommendation adopted, 2018 WL 3998965 (E.D.N.Y. Aug. 20, 2018); Katzenberg v. Lazzari, No. 04 CV 5100, 2007 WL 2973586, at *7 (E.D.N.Y. Oct. 9, 2007) (reducing attorney's fees where duplicative and redundant time after court reviewed entries); Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 64 (E.D.N.Y. 2003) (reducing attorney's fees by 10% where "overlap of efforts" and the court noted that "greater economy of time might have been used"). In particular, there are duplicative entries by attorneys and staff for tasks like preparing interrogatories and requests for production, as well as entries for internal communications between plaintiff's attorneys and their non-attorney staff regarding administrative and organizational matters. See, e.g., Pl.'s Ex. 1-A, at 11 ("Finish drafting written discovery responses . . ." by Anthony May on 11/2/20, and "Review Hernandez draft Responses to RFP and Interrogatories . . ." by Denise Altobelli on 11/2/20); 15 ("Email exchange with K Considine re supplemental releases . . ." by Denise Altobelli on 12/1/20; "E-mails to and from Denise M. Altobelli; confer with Denise M. Altobelli" by Katherine Garvey on 12/1/20); 28 ("Microsoft chat with Anthony J. May re records needed . . ." by Denise Altobelli on 2/16/21); 30 ("Emails to and from Kasey Considine re errata sheets" by Katherine Garvey on 3/1/21).

These duplications and the excessive number of hours expended on the tasks identified and highlighted in the accompanying Exhibit B[2] (as to BGL) and Exhibit C (as to DRC) should,

---

[2] At the time of filing, the undersigned experienced technology-related complications that hindered her firm's ability to upload the voluminous billing record exhibits specifically identifying the individual billing entries to which Defendants' object in Plaintiff's petition for attorney's fees. The undersigned will file those exhibits with the Court promptly upon resolution of the problem encountered.

accordingly, be discounted from Plaintiff's attorney's fee award based on the apparent "overlap of efforts" and prevalence of opportunities where "greater economy of time might have been used." Tokyo Electron Arizona Inc., 215 F.R.D. at 64. Allowing Plaintiff to recover these fees would result in a massive "windfall" to her attorneys, and should be avoided.

### 3. Billing for Extraneous Matters

Plaintiff's billing records also include entries related to calls, meetings and other tasks related to the Town's declaratory judgment action (the "DJA"), Town of Enfield v. Travelers Indemnity Co., et al., No. HHD-CV21-6144598-S, judicial district of Hartford (2021), initiated for purposes of obtaining coverage for Plaintiff's claims and eventual judgment. While related, Plaintiff's attorneys' participation and attendance at these ancillary proceedings played no part in Plaintiff's ability to prevail on her claims at trial in this case, and fees therefor should not be recoverable in an award of attorney's fees based on Plaintiff's trial success.

For example, in BGL's billing records (Ex. 1-A), there are various entries for drafting records, participating in client meetings and attending proceedings related to the DJA. See, e.g., Ex. 1-A at 51 ("Confer with Kasey Considine via telephone call and email re status of declaratory action and review local rules re same" by Anthony May on 8/2/21; "Confer with Benjamin Berger via email re call to discuss modification to declaratory judgment complaint" by Anthony May on 8/2/21"); 52 ("Review motion to strike in declaratory judgment action" by Eve Hill on 9/17/21); and 53 ("Confer with Rachel Mirsky and team via email re Declaratory Judgment" by Anthony May on 11/2/21). In DRC's billing records, there are more entries related to the DJA, including multiple hours billed by "Rachel Mirsky", who played no other role in the litigation of plaintiff's case against the Town and Board. See Pl.'s Ex. 2-A at 18 ("Call to

state court clerk re: declaratory judgment case status" by Rachel Mirsky on 12/13/21; "Attend scheduled hearing on Client Motion to Strike, Traveler's Request to Revise in declaratory judgment action" by Rachel Mirsky on 11/1/21).

Because these entries – and other similar entries present throughout billing records for both BGL and DRC – are unreasonable and excessive, therefore, they should not be counted in calculating Plaintiff's reasonable attorney's fee in this case.[3]

### 4. Defendants Litigated this Case Reasonably and in Good Faith

Plaintiff has also alleged that the Town engaged in "scorched-earth tactics," which drove up the cost of this litigation. Pl. Mem., at 9 [ECF No. 183-1]. This argument is wholly without merit, as evidenced by the fact that plaintiff was represented by a boutique civil rights firm that employs 23 attorneys based in Baltimore, Maryland – Brown, Goldstein & Levy, LLP ("BGL") – supplemented by additional legal support from Disability Rights Connecticut ("DRC"), its attorneys and staff. BGL committed vast resources to this litigation, including at least 6 lawyers, 2 law students, and 3 paralegals. Plaintiff submitted billing records from a shocking eleven (11) timekeepers, not including Attorneys Considine or Dorfman of DRC, both of whom actually attended and, as to Attorney Considine, participated in trial. See Exhibit 1 to Pl.'s Mot. Attorney's Fees, ECF No. 183-2, at 9-10.

---

[3] Defendants submit that any and all attorney's fees incurred by Plaintiff after they served their Rule 68 Offer of Judgment on May 2, 2023, may not be recovered based on plaintiff's failure to recover more in compensatory damages than the value offered to her by defendants. To avoid unnecessary waste of judicial and party resources, therefore, defendants have not specifically itemized each deficiency apparent in Plaintiff's attorneys' billing records post-May 2, 2023, as none are recoverable. However, should this Court determine that Plaintiff's fees did not stop accruing as of the date of defendants' Rule 68 Offer of Judgment, Defendants maintain that the same arguments raised herein as to the pre-Offer billing entries apply equally to those entries occurring on or after May 2, 2023. Defendants will submit itemized billing records with deficiencies specifically identified for that time period should the Court deem it necessary.

In addition to the voluminous billing records produced by BGL, Attorneys Considine and Dorfman and various DRC staff also submitted significant billing records that only further inflate the already bloated fee claim at issue. <u>See</u> Exhibit 2-A to Pl.'s Mot. Attorney's Fees, ECF No. 183-10.

Conversely, defense attorneys James Tallberg and Kimberly Bosse – part of a small 5 lawyer firm – presented a reasonable and appropriate defense against the small army of lawyers who vigorously prosecuted this action for Plaintiff. There was no scorched earth approach employed during this litigation, at least not by the defense.

**E.  PLAINTIFF'S DISCLOSURE OF CONFIDENTIAL SETTLEMENT INFORMATION IS INADMISSIBLE AND SHOULD NOT BE CONSIDERED**

Federal Rule of Evidence 408 prohibits evidence of alleged settlement negotiations from being offered to prove either "validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." In effect, Rule 408 "essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations." <u>Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC</u>, 739 F. Supp. 2d 125, 129 (D. Conn. 2010) (quoting <u>Rein v. Socialist People's Libyan Arab Jamahiriya</u>, 568 F.3d 345, 351 (2d Cir. 2009)). Rule 408, however, "has limits," including that "evidence regarding settlement negotiations is admissible if used for a purpose other than one of those expressly prohibited by the Rule," <u>id.</u> (citing <u>PRL USA Holdings, Inc. v. U.S. Polo Ass'n</u>, 520 F.3d 109, 114 (2d Cir. 2008)) and that "the Rule does not operate to exclude evidence when the validity or amount of the claim was not disputed." <u>Id.</u>

In her motion, Plaintiff makes numerous references to settlement demands and rejections to support her argument that Defendants unreasonably drove up Plaintiff's fee costs by rejecting what she deemed to be "reasonable" settlement offers. See Pl.'s Mot., at 3-5, 12-14. This evidence is plainly inadmissible to demonstrate the reasonability of Defendants' actions or to justify the amount of attorney's fees owed to her under § 1988.[4]

As a result, the parties' respective positions during settlement negotiations, as set forth in Plaintiff's motion, should have no bearing on the Court's assessment of the degree of success or any other element of the fee award to which Plaintiff may be entitled. Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 542-43 (S.D.N.Y. 2008).

**F.    PLAINTIFF IS NOT ENTITLED TO RECOVER ANY FEES, COSTS OR EXPENSES ACCRUING AFTER HER REJECTION OF THE DEFENDANTS' RULE 68 OFFER OF JUDGMENT**

Federal Rule of Civil Procedure 68 provides in relevant part:

> [A] party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued.... If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68(a), (d).

"Rule 68 is a cost-shifting rule designed to encourage settlements without the burdens of additional litigation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 229 (2d Cir. 2006); accord Marek v. Chesny, 473 U.S. 1, 5 (1985). Under normal circumstances, a plaintiff who

---

[4] Beyond being inadmissible, plaintiff's motion for fees does not accurately depict Plaintiff's settlement demands which, prior to trial, were far higher than Plaintiff has represented to the Court because plaintiff was operating under the mistaken assumption that she could recover significant emotional distress damages, notwithstanding the holding in Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212 (2022) and its complete preclusion of the availability of emotional distress damages.

prevails on a 42 U.S.C. § 1983 claim is entitled to recover costs, including reasonable attorney's fees. See Fed. R. Civ. P. 54(d)(1); 42 U.S.C. § 1988(b); Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 97 (2d Cir. 1997). Rule 68, however, precludes a plaintiff from recovering post-offer costs if (a) the defendant timely serves plaintiff with an offer of judgment, (b) plaintiff rejects the offer, and (c) plaintiff prevails but obtains a judgment less than the rejected offer. Fed. R. Civ. P. 68(d); see also Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 58 (2d Cir. 2012).

Where, as here, a fee-shifting statute is involved, the award of attorneys' fees is likewise limited to those fees incurred prior to the plaintiff's rejection of the Rule 68 offer. See Marek, 473 U.S. at 9; Wilson v. Nomura Securities International, Inc., 361 F.3d 86, 89 (2d Cir. 2004); Stanczyk v. City of New York, 752 F.3d 273, 280-81 (2d Cir. 2014) ("[T]he district court properly limited [the plaintiff's] costs and attorney's fees to those incurred prior to [the date on which the Rule 68 offer was made]" where the Rule 68 offer exceeded the amount recovered by plaintiff at trial).

In West v. DOCCS, No. 05-CV-447, 2018 WL 2901330 (W.D.N.Y. June 12, 2018), the defendant made a Rule 68 offer of judgment to the plaintiff in the amount of $500.00, which included costs, to resolve the plaintiff's pending claims under, *inter alia*, the ADA and Section 504. Id., at *1. The plaintiff did not accept the offer. Id. At trial, the plaintiff prevailed on a single claim under the ADA and Section 504 of the Rehabilitation Act and was awarded $1 in nominal damages. Id. The court determined that Plaintiff was a "prevailing party" and entitled to reasonable attorney's fees and costs under these statutes. Id. However, due to the plaintiff's limited success, prevailing on only one of his claims, the court applied an 85% reduction to the lodestar amount, resulting in a fee award of $27,750.27. Id., at *6. The court considered the

plaintiff's rejection of the Rule 68 offer as one factor in reducing the fee award, and confirmed that "[plaintiff's] unaccepted Rule 68 offer was greater than the ultimate judgment in this case, and therefore [plaintiff's] fees stopped accruing as of December 29, 2017 [the date of the offer]." Id., at *2.

Additionally, in Marek, the defendants made a pre-trial settlement offer under Rule 68 for $100,000, which explicitly included costs accrued up to that point and attorney's fees. Marek, 473 U.S. at 3-4. The plaintiff declined this offer and, following trial, received a judgment that was less favorable than the $100,000 settlement offer, being awarded only $60,000. Id. Following an appeal to the Supreme Court of the United States, the Court held that defendants were not liable for attorney's fees incurred by the plaintiff after rejecting the settlement offer. Id., at *12.

Here, plaintiff's claim for attorneys' fees should be reduced due to her rejection of Defendants' pre-trial Rule 68 Offer of Judgment in the amount of $75,000. This amount is substantially greater than the $10.00 in damages that she was ultimately awarded at trial. Accordingly, to the extent Plaintiff incurred attorney's fees and costs after service of the Rule 68 Offer of Judgment on May 2, 2023, she cannot recover such expenses through her motion for attorney's fees. This means that the any fees Plaintiff incurred after May 2, 2023, should additionally be eliminated from Plaintiff's fee award. See Ex. 1-A to Pl.'s Mot., at 61-87; Ex. 2-A to Pl.'s Mot., at 22-31. Plaintiff's claim for costs in the amount of $58,658.38 appears to be mostly related to costs incurred after Defendants' May 2023 Offer of Judgment. See Pl.'s Mot., at 34 (referencing travel expenses, and expert fees, including trial testimony). The vast majority

of these litigation costs should be disallowed because Plaintiff's nominal damage award of $10 did not exceed the $75,000 Offer of Judgment.

### 1. Defendants are entitled to recover costs incurred after the date on which their Rule 68 offer was made to plaintiff

In addition to cutting off recovery of a prevailing party's post-offer attorney's fees, Rule 68 also "reverses Rule 54(d) and requires a prevailing plaintiff to pay a defendant's post-offer costs if the plaintiff's judgment is less favorable than the unaccepted offer." Stanczyk v. City of New York, 752 F.3d 273 (2d Cir. 2014). In other words, under Rule 68(d), if a defendant makes a settlement offer, and the plaintiff rejects it and later obtains a judgment that is less favorable than the one offered her, the plaintiff must pay the costs incurred by the defendant after the offer was made. See Fed. R. Civ. P. 68(d); Marx v. Gen. Revenue Corp., 568 U.S. 371, 375 (2013).

Here, as noted, plaintiff rejected the Rule 68 Offer of Judgment made by Defendants on May 2, 2023. Accordingly, to the extent Defendants incurred costs after that date, which they have, Defendants are entitled to reimbursement of that amount by Plaintiff under the cost-shifting provision of Rule 68.[5]

## III. CONCLUSION

For all of the foregoing reasons, the Town of Enfield and Enfield Board of Education respectfully request that plaintiff's motion for attorney's fees be denied or, at the very least, that the amount of attorney's fees awarded be significantly reduced.

---

[5] Should this Court determine that plaintiff is responsible for reimbursing Defendants for their post-Rule 68 offer costs, Defendants will submit an itemization of those costs to the Court and plaintiff's counsel for review..

DEFENDANTS, ENFIELD BOARD OF
EDUCATION AND TOWN OF ENFIELD

BY /ss/ James N. Tallberg
James N. Tallberg
Federal Bar No.: ct17849
Kimberly A. Bosse
Federal Bar No.: ct31063
Karsten & Tallberg, LLC
500 Enterprise Dr., Suite 4B
Rocky Hill, CT 06067
T: (860)233-5600
F: (860)233-5800
jtallberg@kt-lawfirm.com
kbosse@kt-lawfirm.com

**<u>CERTIFICATION</u>**

I hereby certify that on August 21, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.

/ss/ Kimberly A. Bosse
Kimberly A. Bosse
