# EXHIBIT A

**BROWN GOLDSTEIN LEVY**

Eve L. Hill
ehill@browngold.com

July 1, 2020

**PERSONAL AND CONFIDENTIAL**
**VIA EMAIL**

Christine L. Chinni                                   James N. Tallberg
Legal Counsel, Enfield Board of Education            Office of the Town Attorney
Chinni & Meuser LLC                                   Town of Enfield
1 Darling Drive                                       820 Enfield Street
Avon, CT  06001                                       Enfield, CT  06082
*chris@chinniandmeuser.com*                           *jtallberg@kt-lawfirm.com*

RE:    *Hernandez v. Enfield Board of Education, et al.*, Case No. 3:19-cv-01907 (MPS)

Dear Ms. Chinni and Mr. Tallberg:

As required by the Court's Scheduling Order dated March 2, 2020, Plaintiff herewith submits her damages analysis.  Plaintiff reserves the right to modify or otherwise supplement this damages analysis upon completion of the expert report or as otherwise appropriate in light of information learned during further investigation of this case.

In accordance with the facts as set forth in Plaintiff's Complaint, Ms. Hernandez demands $150,000 in damages for her emotional pain, suffering, and mental anguish resulting from the following acts by:

1. Defendants' failure to provide Ms. Hernandez with auxiliary aids, services, and effective communication during her tenure as an elected member of the Enfield Board of Education by providing her with written communications in lieu of oral communications during Board meetings, some of which were conducted jointly with the Town of Enfield and its elected officials;

2. Defendants' insistence on communicating with Ms. Hernandez by speaking with her by telephone, despite Ms. Hernandez repeatedly requesting to communicate via written communications or in person;

3. Defendants' refusal to communicate with Ms. Hernandez using text-based communications, instead requiring her to participate in lengthy, complex, heated discussion verbally, both in executive session and by phone;

4. Defendants prohibiting Ms. Hernandez from taking notes during meetings, some of which were conducted jointly with the Town of Enfield and its elected officials, despite Ms. Hernandez's assurance that notes would be destroyed after the meetings concluded;

Brown, Goldstein & Levy, LLP

Christine L. Chinni, Esq.
James K. Tallberg, Esq.
July 1, 2020
Page 2

5. In March 2019, nearly a year and a half after Ms. Hernandez's election to the Board, Defendants briefly agreed to provide her with written communications at executive session, but later retracted their agreement and again informed Ms. Hernandez that she was not entitled to written communications and was prohibited from taking notes;

6. Defendants, through Board counsel, informing Ms. Hernandez during a June 19, 2019 meeting that she had not produced documentation concerning her disabilities, despite such information having never been requested;

7. Defendants' effectively removing Ms. Hernandez from her elected position after accusing Ms. Hernandez of engaging in inappropriate e-mail communications and leading her to believe that she was no longer permitted to attend meetings in which she had been elected to participate.

As a direct and proximate result of Defendants' conduct, Ms. Hernandez experienced sensory dysregulation that has left her unable to communicate verbally, increased anxiety, depression, panic attacks, and shutdown. At times, she has been forced to become dependent on her spouse for care, leaving him responsible not only for her well-being, but also that of their children.

Our damage claim is consistent with awards and settlements in other litigation in which these or similar claims have been brought.

**ADA/Section 504 Discrimination:**
**Failure to Provide Auxiliary Aids and Services to Ensure Effective Communication**

Litigation involving allegations of discrimination by defendants, including public entities, against individuals who are entitled to auxiliary aids, services, effective communication or other similar accommodations resulted in settlements and jury verdicts ranging from $125,000 to over $500,000. For example:

- A $527,500 settlement was reached with a hospital that, on five separate occasions, either failed to provide interpreters for a deaf patient, failed to provide an effective interpreter, or failed to provide an interpreter in a timely manner. *Naiman v. NYU Hospital Center*, 351 F. Supp. 2d 257 (S.D.N.Y. 2005).

BROWN, GOLDSTEIN & LEVY, LLP

Christine L. Chinni, Esq.
James K. Tallberg, Esq.
July 1, 2020
Page 3

---

- A $125,000 settlement between a school board and an autistic student who was denied accommodations of having the use of a service animal and having a full-time nurse on staff. *Hughes v. Dist. Sch. Bd. of Collier Cty.*, 2010 WL 4926786 (M.D. Fla. 2010).

- A $350,000 settlement between a school board and an autistic student who was denied accommodations, regularly suspended, and intimidated into leaving the school district. *N.B.F. v. Santa Monica-Malibu Unified Sch. Dist.*, 2017 WL 4237131 (C.D. Cal. 2017).

- A jury awarded $125,000 to a deaf inmate who was denied his preferred method of communication, was denied an ASL interpreter, and had his court appearance delayed. *Updike v. Multnomah Cty.*, 2019 WL 7040097 (D. Or. 2019).

- Connecticut hospitals paid $353,000 to settle the claims of deaf plaintiffs who were denied interpreters when obtaining medical care. *See Connecticut Association of the Deaf, et al. v. Middlesex Memorial Hospital, et al.*, http://www.justice.gov/opa/pr/1998/June/303.html

- A $160,000 settlement between the Department of Veteran Affairs and an employee who was denied an accommodation for her asthma and harassed by her employer. *Muldoon v. U.S. Dep't of Veteran Affairs*, JVR No. 802877 (D. Mass 2000).

- A deaf patient was awarded $400,000 after her doctor failed to accommodate her disability by hiring an ASL interpreter or providing written communications. *Gerena v. Fogari*, 2008 WL 4847534 (Super. Ct. N.J. 2008).

- In *Fox v. Trinity Medical Center* a hospital that refused to provide effective communication with a deaf parent before surgery on a child paid $198,000 in damages as well as a $20,000 civil penalty. https://www.ada.gov/trinity.htm

- A settlement of $125,000 was reached in a case where a deaf father alleged that he was denied interpreters and his adult children were used as interpreters by a hospital. *See Posner v. Parkway Hospital*. http://www.deaftoday.com/news/2004/05/parkway_hospita_1.html

- Wells Fargo Bank in 2011 agreed to pay $16 million in damages, $1 million in charitable donations to disability nonprofits, and $55,000 in civil penalties to settle claims that it failed to accept calls from deaf callers via TTY relay and failed to provide Braille or large

Brown, Goldstein & Levy, llp

Christine L. Chinni, Esq.
James K. Tallberg, Esq.
July 1, 2020
Page 4

print financial documents to people with vision disabilities.
https://www.ada.gov/wells_fargo/

We believe the verdicts and settlements in the above cases provide more than ample support for our request for a modest settlement of $150,000 on behalf of Ms. Hernandez. Furthermore, there are aggravating factors in Ms. Hernandez's case that suggest a jury reaction to Defendants' conduct could place Defendants at risk of a much higher damage award, namely, the continuous violations and refusals to provide basic accommodations, the severity of Ms. Hernandez's medical condition, and the ongoing effects the discrimination have had on her ability to communicate.

In addition to significant exposure in terms of damages, however, Defendants face responsibility for Ms. Hernandez's attorneys' fees and costs should she be successful in convincing a jury of Defendants' discrimination. Past litigation suggests that attorneys' fees and costs in this kind of case are likely to be well into six figure territory. For example, in *Gerena*, the Court awarded attorneys' fees and costs totaling $202,514.71 where a hospital failed to provide similar effective communications to a patient.  Presently, Plaintiffs' fees and costs total $77,248.00, which will increase as litigation continues, including prospective settlement negotiations.

In light of the foregoing, Plaintiff has authorized counsel to settle this matter for $150,000 in damages and $77,248.00 in attorneys' fees and costs.

Very truly yours,

Eve L. Hill